[No. 11233–3–I.   Division One.   May 9, 1983.]

THE STATE OF WASHINGTON, *Respondent*, v. JENNIFER D. WELLINGTON, *Appellant*.

608

*Platis, Conom, Rakus & Urie* and *Tom P. Conom,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Stephen Moore, Deputy,* for respondent.

SCHOLFIELD, J.—Jennifer Wellington was convicted of attempted third degree theft in Airport District Court. Her conviction was affirmed on appeal to superior court and is before this court pursuant to a grant of discretionary review. We affirm.

An undercover police officer testified that on March 6, 1981, he posed as a customer visiting the Baby Doll Studio, where Wellington was employed. Upon inquiry by the officer as to what kind of a place Baby Doll's was, Wellington told him he could become a member for 3 months for a price of $20, and as a member would be entitled to go to the "Doll Room" and would enjoy other benefits. She described one of the benefits as being entitled to buy adult toys at a 20 percent discount.

The officer said he wanted to join and was taken to the "Doll Room," where he observed assorted sexual devices for sale. After paying his $20, the officer was invited to "private" rooms, where he would receive "more benefits." One of the "private" rooms was the "Leg Room," available for an additional $60, and the "Panty Room," available for $80. Wellington assured the officer he would be pleased with the additional "benefits" available there.

Wellington declined any detailed description of the added "benefits," but said one thing she would do for him in the "Panty Room" was a 4–letter word starting with an "s." The officer paid an additional $80 for the "Panty Room," where he observed several pairs of panties on the wall for sale at $20 each. Wellington undertook to sell him some of the panties. The officer declined, and Wellington

told him that now that they were in a private room, she could offer him the opportunity to be "fully benefited" by her for another $80.

The officer then demanded to know what he would get for his additional $80 and made it clear he was interested in a sexual experience. Wellington said she could not discuss the additional benefits in detail because of the police, but that they would be in another room and she would be much closer to him.

The officer said he could employ a prostitute out on the street for $40. Wellington explained that as a "fully benefited" member, he could come in as often as he liked during the next 3 months at no additional cost. The officer paid an additional $80. They went into an adjoining room. Women's undergarments and stockings were displayed on the wall for sale. Wellington invited him to make a purchase of some of the items on sale. The officer declined to make any purchases, and Wellington then told him he had been "fully benefited." At this, the officer acted annoyed. He reminded her that she was going to do something spelled with four letters beginning with an "s." She told him the word she referred to was "sell." The officer told her he felt he had been cheated, and he wanted his money back. Wellington told him his money would not be returned and that if he was going to argue he would have to leave and walk away from his $180. The officer inquired as to any additional options and was told by Wellington that for $60 more, she would get "in depth" with him. He inquired further, but Wellington declined to give details but did say they would be very close together. The officer then asked if he could pay the $60 but come back at a later day for the "in depth" benefit. Wellington said he could. The officer paid the $60 and Wellington left the room. When she returned, she took him over to the wall where the stockings were hanging, stood close to him, and began explaining how much the stockings cost and what they were made of. When the officer inquired as to what was going on, Wellington told him that she was doing an "in depth" sales pitch. The officer

then acted annoyed and said that he wanted to leave but come back and start over again at the "in depth" level. Wellington told him he could do that, and the officer left.

The officer described Wellington as a white female approximately 20 years of age, weighing 130 pounds, with a fair complexion, blue eyes, and wearing a 1-piece bathing suit.

Wellington was charged with attempted theft in the third degree pursuant to RCW 9A.56.050.[1]

RCW 9A.56.020(1)(b) provides:

(1) "Theft" means:

. . .

(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services;

. . .

Deception is defined by RCW 9A.56.010(4) as follows:

(4) "Deception" occurs when an actor knowingly:
(a) Creates or confirms another's false impression which the actor knows to be false; or
(b) Fails to correct another's impression which the actor previously has created or confirmed; or

. . .

(e) Promises performance which the actor does not intend to perform or knows will not be performed.

Wellington contends that her conduct did not fall within the statutory definition of theft by deception because she did not expressly promise to provide any service which was not, in fact, provided.

The plain language of the statute does not require an express misrepresentation. The statute focuses on the false impression created rather than the falsity of any particular statement. The trial court in this case found upon substantial evidence that Wellington's conduct was cleverly calculated to create in the mind of the victim the impression that activity of a sexual nature with Wellington was avail-

---

[1]RCW 9A.56.050(1) states:

"A person is guilty of theft in the third degree if he commits theft of property or services which does not exceed two hundred and fifty dollars in value."

able and would be included as part of the "benefits" she continually referred to. When Wellington advised the officer that he had been "fully benefited," this provided ample evidence that Wellington did not intend to perform consistent with the impression she so assiduously worked to create.

■ Wellington contends the crime of theft cannot be committed where there is no false representation of fact and the "complainant receives precisely what is bargained for." This contention rests upon Wellington's vague references to "benefits" rather than any direct promise of a sexual experience and upon the fact that the undercover officer was not "deceived."

Wellington was convicted upon a charge of attempted theft. The trial judge held that in a prosecution for criminal attempt to commit theft by deception, it is not necessary in order to convict that the deception be successful. We agree with the trial judge.

A person is guilty of an attempt to commit crime if, with intent to commit a specific crime, he does any act which is a substantial step toward the commission of that crime.

RCW 9A.28.020(1).

There was ample evidence to support a finding beyond a reasonable doubt that Wellington, with intent to commit theft, took substantial steps toward commission of theft by deception. That the undercover officer was not deceived is immaterial.

Wellington next contends that public policy should bar her conviction because the officer's conduct, posing as a customer desiring services which it would have been unlawful for Wellington to provide, was itself unlawful.

■ A similar contention was decided adversely to Wellington in *State v. Emerson,* 10 Wn. App. 235, 517 P.2d 245 (1973), where the court stated at page 240:

Public policy requires that crime be detected and its perpetrators punished. Public policy also requires that a defendant be fairly treated. Practical considerations

require that, in the performance by police of crime detection duties, at least some deceitful practices and "a limited participation" in unlawful practices be tolerated and recognized as lawful.

*See also State v. Putnam,* 31 Wn. App. 156, 639 P.2d 858 (1982).

Lastly, Wellington argues that RCW 9A.56.020(2) provides her a complete defense. This contention is patently frivolous. Nothing about Wellington's deceptive means of operation suggests a claim of ownership made in good faith.[2]

A false representation of a material fact, made for the purpose of inducing another to part with his property and with the intent to deprive him of his property, is inconsistent with any open and avowed claim of title preferred in good faith; and the defense allowed by the statute is unavailable in a prosecution for obtaining money by false pretenses.

*State v. Emerson,* 43 Wn.2d 5, 12, 259 P.2d 406 (1953).

The undercover officer was a stranger to Wellington. She set about to trick him into paying her substantial sums of money by causing him to believe that sex was for sale at Baby Doll's.

Defendant's conviction is affirmed.

DURHAM, A.C.J., and WILLIAMS, J., concur.

Reconsideration denied June 9, 1983.

Review denied by Supreme Court August 12, 1983.

---

[2]RCW 9A.56.020(2) reads as follows:

"In any prosecution for theft, it shall be a sufficient defense that the property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable."