[Nos. 40912-7-II; 42410-0-II.    Division Two.    December 7, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER ROBIN BRIEJER, *Appellant*.

*In the Matter of the Personal Restraint of* CHRISTOPHER ROBIN BRIEJER, *Petitioner*.

210

*Lance M. Hester* (of *Hester Law Group*), for appellant.

*Robert M. McKenna, Attorney General*, and *Susan Sackett DanPullo, Assistant*, and *Mark E. Lindquist, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

¶1 VAN DEREN, J. — Christopher Robin Briejer appeals his jury convictions on 56 counts of first degree theft by color or aid of deception based on his receipt of benefits from the Washington State Department of Labor and Industries (L&I) for a back injury he maintained was related to a previously closed back injury claim. Briejer argues (1) sufficient evidence does not support his conviction, (2) the trial court abused its discretion when it admitted testimony about his participation in mountain climbing and "extreme sports," and (3) his counsel was ineffective for failing to move to dismiss at the close of the State's case. In his consolidated personal restraint petition (PRP), Briejer also argues that his counsel was ineffective for failing to move to exclude testimony of a biomechanics expert who testified regarding the effect of force on the human spine. We deny

his PRP. But we agree with Briejer that the trial court's failure to exclude highly prejudicial testimony about his participation in mountain climbing and extreme sports was not harmless error. And because we also agree with Briejer that the State failed to present sufficient evidence to prove beyond a reasonable doubt that Briejer affirmatively deceived the State, we vacate his convictions and remand for dismissal with prejudice.

## FACTS

¶2 On February 2, 2000, Briejer filed with L&I a claim for benefits for a work injury to his lower back. L&I accepted his claim of lumbar strain. In June 2000, after x-rays of Briejer's back showed he had returned to "normal," it closed his claim. Report of Proceedings (RP) (June 7, 2010) at 51.

¶3 On January 13, 2004, Briejer asked L&I to reopen his February 2000 claim based on pain in his lower back and left leg. Briejer stated that his 2000 condition had not worsened due to another injury or accident, but he also stated that he had suffered "ankle and wrist problems" since his claim closed. RP (June 7, 2010) at 33.

¶4 Briejer's attending physician, Dr. Neil Shonnard, diagnosed him with an L5 radiculopathy or a "slipped disk." RP (June 8, 2010) at 194. Dr. Shonnard's records indicated that Briejer had also suffered a "crushed subtalar [(ankle)] joint" after his original claim was closed and that Briejer told Dr. Shonnard that the back pain had " 'simply crept up on him slowly without any specific injury.' " RP (June 8, 2010) at 195. To determine whether Briejer's new complaint and his original February 2000 injury were related, Dr. Shonnard recommended that Briejer have a magnetic resonance imaging procedure (MRI) and that he undergo an independent medical examination (IME).

¶5 L&I scheduled an IME with Dr. Sean Ghidella, an orthopedic surgeon, to determine whether to reopen Briejer's

claim. After Briejer requested that L&I reopen his claim but before he had the IME, Dr. Shonnard performed back surgery on Briejer on January 29, 2004. During the IME on February 25, 2004, Dr. Ghidella investigated whether Briejer's condition was the natural progression of his original work-related injury or was the result of an intervening cause. Briejer informed Dr. Ghidella that he had not suffered any intervening injury pertaining to his original claim but that he had suffered an injury to his ankle. At trial, Dr. Ghidella acknowledged that Dr. Shonnard had already performed surgery on Briejer's back before he saw him:

> Dr. Shonnard saw . . . Briejer again on January 20, 2004 and noted the symptoms had worsened. Quite appropriately, he offered him the standard of care, which is to be operated on to relieve that pressure. Then on January 29, 2004, Dr. Shonnard had performed that disk procedure . . . . It had occurred prior to my evaluation.

RP (June 8, 2010) at 197. Dr. Ghidella concluded that there was no new explanation for the worsening of Briejer's condition, and he recommended that L&I reopen Briejer's original claim.

¶6 Based on Dr. Ghidella's IME report, L&I reopened Briejer's claim on March 16, 2004, effective December 10, 2003, the first date that Briejer had sought treatment for the worsening of his back condition. As a result of his back surgery on January 29, 2004, Briejer was unable to work; thus, L&I began paying him time-loss benefits as of that date.

¶7 Four years later, in 2008, L&I received an anonymous tip that Briejer was engaging in activities inconsistent with his alleged injury; specifically, the tip directed L&I to a YouTube video of Briejer climbing Mt. Rainier.[1] L&I initi-

---

[1] The record does not clarify when the video was made, but neither party raises an issue or argues that the events taking place in the video occurred before L&I reopened his claim and provided time-loss coverage.

ated an investigation, during which L&I's fraud investigator, Alan Gruse, discovered reports of multiple broken bones due to Briejer's "extreme sporting activities" in Briejer's 2006 medical records. RP (June 7, 2010) at 79.

¶8 During his investigation, Gruse requested medical records from hospitals where Briejer had been treated for injuries resulting from his extreme sporting activities and discovered that on October 3, 2003, Briejer had been a self-employed, uninsured siding installer and that he had fallen eight feet from a ladder and landed directly on his feet, crushing the subtalar joint. Briejer had informed Dr. Ghidella that he had stopped working on October 3, 2003.[2] In addition, on his application to reopen his claim, Briejer indicated that the last date he had worked was October 3, 2003, and that on that date he had been employed by Phil's Precision Siding.

¶9 To determine whether the October 3, 2003, fall Briejer suffered could have had an impact on his back, Gruse sought the advice of Allan Tencer, a biomechanical engineer employed at the University of Washington School of Medicine. Tencer opined that the force that fractured Briejer's ankle was similar to the force that would cause damage to his spine. Gruse also gave Briejer's medical records to Dr. Ghidella, who determined that it was more probable than not that Briejer's back injury resulted from his October

---

[2] The record does not support the State's argument, based on Dr. Ghidella's trial testimony, that Briejer told Dr. Ghidella that he stopped working on October 3, 2003, due to surgery on his back. At trial, Dr. Ghidella testified as follows:

[Dr. Ghidella:] I had questions for him in terms of his employment, that he had stopped work as a carpenter as of October 3rd, 2003.
[State:] Did he say why he had stopped?
[Dr. Ghidella:] He noted that it was because of his surgery and that he anticipated that very shortly he would probably be able to return to his job of injury without restrictions, based on how well he was doing and how well he was progressing.

RP (June 8, 2010) at 201. But Dr. Shonnard's records, which Dr. Ghidella had, clearly show that the surgery did not occur until January 29, 2004, three months after he stopped work.

2003 fall and, thus, it was inappropriate for the earlier claim to have been reopened.

¶10 Based on Tencer's and Dr. Ghidella's opinions, Gruse instructed the claims manager to terminate Briejer's benefits in March 2009. Between the date his claim was reopened and the date L&I terminated benefits, Briejer received over $258,000.00 in time-loss benefits, $31,651.12 in vocational retraining, and $76,650.91 in medical services. The State charged Briejer with 57 counts of first degree theft by color or aid of deception related only to his reopened claim in 2004, asserting that his 2003 fall that had injured his ankle was the cause of the 2004 back symptoms and that the L5 radiculopathy did not result from a gradual worsening of his earlier work-related injury.

¶11 Briejer unsuccessfully sought to suppress testimony about his climbing Mt. Rainier and his participation in extreme sports after 2004 when he reopened his claim. He argued that the testimony was irrelevant and that it was highly prejudicial because it suggested that Briejer was not actually injured and was instead taking advantage of the state disability system, when the issue central to the criminal charge at trial was actually whether Briejer had acted deceptively in reopening his earlier workers' compensation claim in 2004. The State countered that the testimony was relevant because Briejer's extreme sports and other activities gave rise to L&I's investigation and, thus, provided background to Briejer's ultimate prosecution, admissible under the so-called "res gestae" exception to ER 404(b).

¶12 Witnesses at trial testified as described above. The jury found Briejer guilty on 56 of the 57 counts, and the trial court sentenced him to 43 months in prison. Briejer timely appeals his convictions.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

¶13 Briejer argues that the evidence is insufficient to support his first degree theft convictions because the State's evidence did not prove beyond a reasonable doubt that he affirmatively deceived the State in order to reopen his workers' compensation claim and receive additional benefits. The State counters that Briejer's representations on his claim reopening form and his statements to Dr. Shonnard and Dr. Ghidella regarding the source of his back injury show that he made a conscious and deliberate effort to deceive the State. We disagree with the State and agree with Briejer.

#### A. Standard of Review

¶14 Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992). We may infer specific criminal intent of the accused from conduct that plainly indicates such intent as a matter of logical probability. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004).

#### B. Theft by Color or Aid of Deception

¶15 To convict Briejer of theft by color or aid of deception based on his 2004 statements supporting the

reopening of his 2000 claim, the State was required to prove beyond a reasonable doubt that "[b]y color or aid of deception[, Briejer] obtain[ed] control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services."[3] RCW 9A.56.020(1)(b).

¶16 " 'By color or aid of deception' means that the deception operated to bring about the obtaining of the property or services; it is not necessary that deception be the sole means of obtaining the property or services." RCW 9A.56-.010(4). "Deception" occurs when, among other things, the defendant knowingly "[c]reates or confirms another's false impression which the actor knows to be false[ ] or . . . [f]ails to correct another's impression which the actor previously has created or confirmed." RCW 9A.56.010(5)(a)-(b).

■ ■ ¶17 "Deception" includes a broad spectrum of conduct, including "not only representations about past or existing facts, but also representations about future facts, inducement achieved by means other than conduct or words, and inducement achieved by creating a false impression even though particular statements or acts might not be false." *State v. Casey*, 81 Wn. App. 524, 528, 915 P.2d 587 (1996) (footnotes omitted). The State must also prove that it relied on the defendant's deception, which "is established where the deception in some measure operated as inducement." *Casey*, 81 Wn. App. at 529.

■ ¶18 "The plain language of the [theft by color or aid of deception] statute does not require an express misrepresentation. The statute focuses on the false impression created rather than the falsity of any particular statement." *State v. Wellington*, 34 Wn. App. 607, 610, 663 P.2d 496 (1983).

---

[3] The jury was also required to find that the property or services exceeded $1,500 in value. Former RCW 9A.56.030(1)(a) (1995). This amount was raised to $5,000 in 2009. LAWS OF 2009, ch. 431, § 7 (effective July 26, 2009).

C. Evidence of Deception

¶19 The State's case rested on the assumption that despite Briejer's multiple disclosures of the *existence* of his ankle injury and the identity of his treating physician, he was deceptive for failing to disclose the *cause* of the ankle injury. Thus, the State claimed (1) Briejer was deceptive for failing to tell L&I that the October 2003 ankle injury had aggravated his back and (2) Briejer induced L&I to provide him with benefits because had L&I known that he fell and crushed his ankle, it would not have reopened his old claim.

¶20 Our examination of the record shows that the State's evidence of deception included that Briejer checked the "no" box next to the question, " 'Did your condition worsen due to another injury or accident either on or off the job?' " RP (June 7, 2010) at 33. But Briejer points out that on his application to reopen the 2000 claim, in response to the form's question, " 'Have you had any new injuries or ill-nesses since the date of the claim closure?' " Briejer responded, " 'Yes, ankle and wrist problems.' " RP (June 7, 2010) at 33.

¶21 The State also argues that Briejer violated his duty of disclosure and committed theft because Dr. Ghidella "relies on the accuracy and honesty of patients." Br. of Resp't at 14. The State presented evidence that when Dr. Ghidella was asked whether Briejer "volunteer[ed] how the subtalar injury occurred," Dr. Ghidella responded, "No." RP (June 8, 2010) at 202. Dr. Ghidella also testified that when he asked Briejer about why he stopped work on October 3, 2003, Briejer failed to mention the accident that injured his ankle that same day. But Dr. Ghidella also testified that when he asked Briejer if he had suffered any other accidents or injuries, Briejer responded that he had injured his ankle, and that the injury did "affect his back to some extent." RP (June 8, 2010) at 203.

¶22 The State also introduced Dr. Ghidella's testimony that he would not have recommended that L&I reopen

Briejer's claim had he known of Briejer's 2003 fall and Tencer's testimony that the type of fall Briejer suffered constituted "the makings of a disc injury." RP (June 9, 2010) at 75. In addition, the State presented evidence that at the time of the injury, Briejer was self-employed, had not elected to pay for workers' compensation coverage, and, thus, would not have been entitled to benefits for that injury if it were not related to the earlier back injury. RP (June 7, 2010) at 14-15, 86-87.

¶23 But despite the State's proffered evidence of deception, L&I's records show indisputedly that Briejer repeatedly referred to his ankle injury, that his medical records clearly showed the severity of the ankle injury, and that it was not immediately obvious to a medical specialist that his ankle injury caused the recurrence of back pain. For example, Dr. Shonnard's notes expressly reflected that Briejer suffered a "subtalar joint crush" in 2003 and provided the name of the treating physician for that injury. RP (June 8, 2010) at 195. Dr. Shonnard also referred Briejer for an MRI and recommended an IME to help sort out whether the ankle injury was related to the recurrence of the back pain. Thus, Dr. Shonnard, the medical professional who knew about Briejer's broken ankle, referred Briejer for an MRI and for an IME because he could not determine whether there was a relationship between the ankle injury and the back pain or the L5 radiculopathy. And Dr. Ghidella had Dr. Shonnard's notes when he performed the IME and questioned Briejer.

¶24 Here, there is no indication that Briejer was deceptive in relating his ankle injury and back pain to Dr. Shonnard, Dr. Ghidella, or L&I because when asked about intervening injuries, he disclosed that he had injured his ankle and that the injury had affected his back, and he gave them the name of his treating physician for the ankle injury. Briejer argues that the totality of the evidence shows

that he did not knowingly[4] deceive L&I about the origin of the recurrence of back pain because he disclosed his ankle injury to L&I on multiple occasions.

¶25 Under the theft by deception statute, the State was required to show beyond a reasonable doubt that Briejer created or confirmed the State's false impression, which impression Briejer knew to be false. RCW 9A.56.010(5)(a). The State attempted to show that Briejer created the false impression that he had suffered no intervening injury by presenting Dr. Ghidella's testimony that he would not have recommended the claim be reopened if he had known of Briejer's 2003 accident and Tencer's testimony that the 2003 accident was the likely cause of his L5 back injury in 2004. But the State failed to present any evidence that Briejer knew that the ankle and back injuries were related, as required by the theft by deception statute. This failure is made even clearer by the State's evidence that neither Dr. Shonnard nor Dr. Ghidella knew or could discern with medical certainty that Briejer's crushed ankle and his L5 back injury were related. This was so even though Briejer told Dr. Ghidella that the ankle injury may have affected his back and Dr. Shonnard knew of the extent of the ankle injury and also knew the treating physician's name. And there was no evidence that Briejer's back symptoms did not come on gradually, as he described.

¶26 Thus, we agree with Briejer that because he did not conceal his ankle injury, the name of his treating physician for the ankle injury, or that his ankle injury affected his back, he did not knowingly deceive L&I. Briejer fulfilled his duty to inform the State of his intervening injury and he was not required to understand the medical connection

---

[4] RCW 9A.08.010(1) provides:

  (b) K[nowledge]. A person knows or acts knowingly or with knowledge when:
  (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
  (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

between his ankle injury and back pain, a connection not obvious to Dr. Shonnard or Dr. Ghidella in 2004.

¶27 Viewing the evidence in a light most favorable to the State, its evidence is insufficient to prove beyond a reasonable doubt that Briejer knowingly deceived L&I about the impact of the ankle injury on his back. Thus, we hold that the State failed to present sufficient evidence to support Briejer's convictions and we remand for dismissal with prejudice.[5]

¶28 We next briefly turn to the issue of admission of evidence of Briejer's participation in extreme sports to clarify the distinction between res gestae evidence and ER 404(b) evidence.

## II. ADMISSION OF EXTREME SPORTS TESTIMONY

¶29 Briejer next contends that his conviction should be reversed because the trial court erred when it denied his motion to exclude evidence of mountain climbing and other extreme sports. He argues that the testimony was irrelevant and improperly admitted under ER 404(b) and that the trial court committed reversible error by failing to conduct an on-the-record balancing of the testimony's probative value against its prejudicial effect, as required by ER 404(b). The State counters that Briejer failed to preserve the ER 404(b) objection for appeal and that even if he did, the evidence was properly admitted under the res gestae exception to ER 404(b) because it provided background for the State's investigation.

### A. Preservation for Appeal

¶30 As a preliminary matter, we address whether Briejer properly preserved the evidentiary issue. Relying on *State v. Mason*, 160 Wn.2d 910, 162 P.3d 396 (2007), the

---

[5] In agreeing with Briejer that the State's evidence does not show criminal intent to deceive necessary for a criminal theft conviction, we do not condone claimants' misstatements or incomplete statements of fact on applications for workers' compensation benefits.

State argues that Briejer failed to preserve his claim because he failed to specifically object to the evidence as " 'prior bad acts.' " Br. of Resp't at 17 (quoting *Mason*, 160 Wn.2d at 933). But our Supreme Court in *Mason* held that while an objection based on "relevance" alone will not preserve an ER 404(b) objection for appeal, "[a]n objection based on 'prejudice' is adequate to preserve an [objection for] appeal, based on ER 404(b), because it suggests the defendant was prejudiced by the admission of evidence of prior bad acts." 160 Wn.2d at 933.

¶31 Briejer moved to exclude the evidence of extreme sports because it was "totally irrelevant and highly prejudicial," citing ER 404(b). Clerk's Papers at 46. During oral argument on his motion to exclude the evidence, Briejer also argued that the evidence of his extreme sports and hiking was "very misleading, very prejudicial." RP (June 3, 2010) at 34. Accordingly, we hold that Briejer properly preserved his ER 404(b) claim for appeal.

### B. Standard of Review

¶32 "We review a trial court's evidentiary rulings for an abuse of discretion." *State v. Williams*, 137 Wn. App. 736, 743, 154 P.3d 322 (2007). A trial court abuses its discretion if its evidentiary ruling is " 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " *Williams*, 137 Wn. App. at 743 (internal quotation marks omitted) (quoting *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004)). The party challenging an evidentiary ruling bears the burden of proving the trial court abused its discretion. *Williams*, 137 Wn. App. at 743.

### C. Res Gestae and ER 404(b)

¶33 Briejer argues that the trial court erred in admitting testimony regarding his participation in mountain climbing and other extreme sports as prior bad acts under ER 404(b). He asserts that the evidence was irrelevant to prove an element of the crime charged and that the trial court

committed reversible error when it failed to balance on the record the probative value of the testimony against unfair prejudice. The State counters that "[t]he evidence of hiking and 'extreme sports' explained how [L&I] discovered Briejer's undisclosed fall, thus it was relevant to the complete history of Briejer's theft" and, thus, was admissible as "an inseparable part of the crime charged (*res gestae*)." Br. of Resp't at 16, 18.

¶34 Trial courts may not admit "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." ER 404(b). We are aware that courts have stated that "[u]nder the res gestae . . . exception to ER 404(b), evidence of other crimes or bad acts is admissible to complete the story of a crime or to provide the immediate context for events close in both time and place to the charged crime." *State v. Lillard*, 122 Wn. App. 422, 432, 93 P.3d 969 (2004); *State v. Powell*, 126 Wn.2d 244, 263, 893 P.2d 615 (1995).

■■ ■ ¶35 But we adopt the reasoning we articulated in *State v. Grier*, 168 Wn. App. 635, 645, 278 P.3d 225 (2012), which departs "from characterizing this 'res gestae' evidence as an exception to ER 404(b)." Such a distinction, in our view, is necessary because as other courts and commentators have noted, "characterizing the res gestae rule as an exception to ER 404(b) is indefinite, is prone to abuse, and 'tends merely to obscure' ER 404(b) analysis." *Grier*, 168 Wn. App. at 645 n.19 (quoting *United States v. Krezdorn*, 639 F.2d 1327, 1332 (5th Cir. 1981)).

¶36 This case illustrates the evils of conflating res gestae evidence with ER 404(b) evidence. Here, during oral argument on Briejer's motion to exclude the extreme sports testimony, Briejer contended that the testimony relating to postclaim activities did not support the State's claim that Briejer was deceptive in reopening his original claim in 2004, but rather it suggested that Briejer was not actually injured after his surgery. Briejer argued, "When you introduce that to a jury, they are going to be easily misled into

thinking that that's what this [case] is about . . . . They're going to think, okay, here's a guy that is trying to pull the wool over everybody's eyes, saying he is hurt, and he is climbing mountains." RP (June 3, 2010) at 34. Accordingly, Briejer argued that the testimony was "very misleading, very prejudicial" to the jury when compared with its relevance. RP (June 3, 2010) at 34. The State countered that the evidence was relevant to prove the "basis for the beginning of the investigation" and to explain why the State investigated Briejer's claim after significant time had passed since his claim was reopened. RP (June 3, 2010) at 34. The trial court ruled, "I'm going to allow [the testimony]."[6] RP (June 3, 2010) at 37.

¶37 Briejer contends that his conviction should be reversed based on the admission of this evidence of postclaim activities.[7] The State contends that the trial court did not err because it adopted the State's argument that the evidence was introduced merely to indicate how Briejer came to L&I's attention and, thus, the evidence was relevant and fell within the scope of the res gestae exception to ER 404(b).

¶38 Further agreeing with the analysis in *Grier*, we review the State's res gestae evidence, not under ER 404(b), but under ER 401, ER 402, and ER 403. *See* 168 Wn. App. at 646. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "The threshold to admit relevant evidence is very low. Even minimally relevant evidence is admissible." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). "Evidence

---

[6] The trial court did not balance the probative value and the prejudicial effect of the testimony on the record, nor did it indicate that it accepted the State's arguments.

[7] Briejer makes this argument under ER 401, ER 402, and ER 403, as well as ER 404(b). We review evidentiary rulings for abuse of discretion. *Williams*, 137 Wn. App. at 743.

is relevant if a logical nexus exists between the evidence and the fact to be established." *State v. Burkins*, 94 Wn. App. 677, 692, 973 P.2d 15 (1999). But "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403.

¶39 L&I began its investigation of Briejer as the result of an anonymous 2008 tip directing L&I to a YouTube video of Briejer hiking on Mt. Rainier. That information prompted the investigation into Briejer's 2006 medical records, which eventually led to L&I's discovery that Briejer's 2003 ankle injury had occurred when he fell off a scaffold while working three years *before* the extreme sports activities.

¶40 We have held in at least one instance that testimony "establishing the background to the investigation which ultimately led to the defendant's arrest" was relevant. *State v. Bonner*, 21 Wn. App. 783, 793, 587 P.2d 580 (1978). Thus, if the evidence merely established the background to the investigation, without more, it may be relevant. *Bonner*, 21 Wn. App. at 793. But the testimony in the present case went beyond merely establishing that L&I received an anonymous tip in 2008 and began investigating Briejer. Here, the evidence, admitted as part of a res gestae exception to ER 404(b), was unrelated to the 2004 offenses with which Briejer was ultimately charged; moreover, this evidence was of events that occurred three years after Briejer reopened his claim.

¶41 The State attempts to distinguish the facts of the present case from those in *State v. Trickler*, 106 Wn. App. 727, 733-34, 25 P.3d 445 (2001), in which Division Three of our court held inadmissible under the res gestae evidence that the police investigated the defendant as a result of stolen property in his possession where the defendant was on trial only for a stolen credit card. *Trickler* held that

[w]hile the events leading up to the discovery of the stolen credit card were relevant and somewhat probative, it was not shown that Mr. Trickler's possession of other allegedly stolen items was an inseparable part of his possession of the stolen credit card, which is the test commonly used in this state.

106 Wn. App. at 734. Here, similar to *Trickler*, Briejer's participation in mountain climbing and extreme sports was by no means an "inseparable part" of his alleged failure to tell the State that there was a clear connection between his October 2003 accident and his L5 injury. 106 Wn. App. at 734. Moreover, even under the more relaxed requirements of ER 401, ER 402, and ER 403, the evidence was not relevant to Briejer's 2003 claim because it did not establish or " 'complete the crime story by establishing the immediate time and place of its occurrence.' " *Grier*, 168 Wn. App. at 645 (quoting *State v. Hughes*, 118 Wn. App. 713, 725, 77 P.3d 681 (2003)). Furthermore, this evidence related to events that occurred three years after Briejer allegedly deceived the State.

¶42 The evidence was also highly prejudicial. As Briejer argues, the testimony regarding his mountain climbing and extreme sports likely led the jury to believe that he had deceived the State by engaging in extreme sports while receiving disability benefits. Thus, although the testimony was allegedly admitted to demonstrate the State's impetus for its investigation, it ultimately operated as propensity evidence that would likely lead a reasonable juror to conclude that Briejer deceived the State because in the years following his 2004 claim he had engaged in extreme sports while receiving benefits. Accordingly, we hold that the trial court abused its discretion in admitting the testimony under ER 401, ER 402, and ER 403, as well as under ER 404(b).

### D. The Error Was Not Harmless

¶43 The State argues that even if the trial court abused its discretion in admitting testimony regarding Briejer's

mountain climbing and participation in extreme sports, the error was harmless because participating in sports "is not a bad thing that inherently causes feelings among jurors, unlike prior criminal acts do" and because the testimony was "only introduced briefly." Br. of Resp't at 24. We disagree.

¶44 " 'An evidentiary error [that] is not of constitutional magnitude . . . requires reversal only if the error, within reasonable probability, materially affected the outcome.' " *State v. Everybodytalksabout*, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002) (quoting *State v. Stenson*, 132 Wn.2d 668, 709, 940 P.2d 1239 (1997)). Conversely, "[t]he error is harmless if the evidence is of minor significance compared to the overall evidence as a whole." *Everybody-talksabout*, 145 Wn.2d at 469. Here, while the State is correct that participation in sports alone does not constitute an inherently "bad" act, the extreme sports testimony in the context of the present case was unfairly prejudicial because it was without relevance to the charges against Briejer and because it suggested that Briejer deceived the State while receiving benefits after his claim was reopened. In addition, while the State argues that "[o]ut of the over 480 pages of trial record, the questioned evidence was only even mentioned on six (6) pages," the fact that the testimony arose multiple times further contributes to its prejudicial effect. Br. of Resp't at 24.

¶45 Finally, the State's evidence, which we deem insufficient, contained weaknesses that were likely overcome by this highly prejudicial testimony. Thus, testimony implying that Briejer likely deceived the State about his physical condition, while receiving benefits from his reopened claim, was almost certainly a significant contributor to the jury's finding of guilt. Accordingly, we hold that the trial court abused its discretion in admitting this testimony and that the error was not harmless. Thus, on this basis alone we would reverse and remand for a new trial if we did not deem the evidence insufficient to support the jury's finding of

guilt. Because we hold that the evidence was insufficient to support the jury's verdict, we do not address Briejer's claim of ineffective assistance of counsel in his direct appeal and in his PRP.

¶46 We deny Briejer's PRP but reverse his convictions based on insufficiency of the State's evidence to prove beyond a reasonable doubt that Briejer committed theft by deception. We remand for dismissal of his convictions with prejudice.

HUNT, J., and BRIDGEWATER, J. PRO TEM., concur.