IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 70569-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| AVRUM TSIMERMAN, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 16, 2015 |

2015 MAR 16 AM 10: 50
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

SCHINDLER, J. — Avrum Tsimerman appeals his conviction of four counts of first degree theft by color or aid of deception. Tsimerman challenges the sufficiency of the evidence, the charging decision, and a number of the trial court's rulings. Because the record on appeal shows sufficient evidence supports the convictions and Tsimerman fails to otherwise demonstrate error, we affirm.[1]

FACTS

In 2005, Avrum Tsimerman[2] entered into a four-year contract with the Washington State Department of Social and Health Services (DSHS) to provide in-home-care services for his mother Leya Rekhter. Under the terms of the contract,

---

[1] Contrary to the State's assertion in its brief, given the nature of the arguments, the exhibits and the portions of the clerk's papers and the transcript provided by Tsimerman are sufficient to review his claims on appeal.

[2] Also known as Alex Zimmerman.

Tsimerman must report within 24 hours the death of his mother or "any significant change" in her condition.

In January 2008, DSHS authorized payment to Tsimerman for up to 173 hours of care each month at a rate of $10.02 per hour and a maximum of $1,733.46 per month. In 2008, DSHS sent Tsimerman service invoice forms to submit for each month. DSHS directed Tsimerman to submit the invoice with his unique provider service number either telephonically or by mail to the Social Services Payment System (SSPS) listing the number of hours worked.

On April 2, 2008, Rekhter and Tsimerman signed an agreement. The agreement is written primarily in Russian. Tsimerman introduced at trial the agreement written in Russian as well as an English translation. The agreement states:

> I, Leya Rekhter, hereby take obligation to pay upon my death my worker Alex Zimerman his salary for 6 months thanks to his having worked and provided care for me for 15 years, no vacations, no days off, 24 X 7.
>
> Verifying the above, this document is signed by myself and my worker A. Z.

On May 5, 2008, Rekhter was admitted to Overlake Hospital Medical Center. Rekhter died on May 16, 2008.

Tsimerman telephonically submitted invoices for 173 hours of care for each month from May to October 2008. Between May 1, 2008 and September 30, 2008, DSHS paid Tsimerman $7,987.75 for 865 hours.

On April 4, 2012, the State charged Tsimerman with four counts of first degree theft by color or aid of deception based on the DSHS payments for the four months after Rekhter died—June, July, August, and September. Represented by private counsel,

Tsimerman entered a plea of not guilty. Before trial, the court granted Tsimerman's motion to proceed pro se.

Tsimerman filed several pretrial motions, including a motion to (1) dismiss the case for violation of the statute of limitations, (2) remove the prosecutor and the detective, (3) change the charges to embezzlement, (4) dismiss the case due to lack of evidence, (5) change the venue, and (6) dismiss the case based on a good faith claim of title. The court denied the motions.

After two days of hearings on pretrial motions, jury voir dire began. During the State's second round of questioning, the prosecutor asked certain jurors about "the right to represent oneself." Juror 10 said, "I think that there is an injustice when somebody who is inadequately suited to represent themselves attempts to represent themselves." Juror 10 continued, "[M]y initial impressions are that Mr. Tsimerman is not adequately prepared to represent himself" and that "in this particular case I think it raises a question in my own mind about whether the Court is being responsible in allowing someone who is inadequately represented to represent themselves." When the prosecutor asked if any other jurors agreed with juror 10, several jurors indicated they agreed. After Tsimerman's second round of questioning, the trial court excused juror 10 for cause.

According to the court record, on May 14, outside the presence of the jury, Tsimerman objected to the "jury pool for lack of representative sample." Tsimerman claims his request was based on the absence of immigrants, speakers of English as a second language, or minorities, and the jurors were prejudiced against him. The trial court denied his request.

During the six-day jury trial, the State presented the testimony of several witnesses and introduced into evidence a number of exhibits. Tsimerman testified on his own behalf, introduced a number of exhibits, and called one other witness.

The trial court denied Tsimerman's request to instruct the jury on the good faith claim of title defense that states, "It is a defense to a charge of theft that the property or service was appropriated openly and avowedly under a good faith claim of title, even if the claim is untenable." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTION: CRIMINAL 19.08, at 319 (3d ed. 2008) (WPIC).

The jury found Tsimerman guilty as charged. Based on an offender score of 3, the trial court calculated Tsimerman's standard range for each count as 4 to 12 months confinement. The trial court granted Tsimerman a first time offender waiver with no confinement time but ordered Tsimerman complete 960 hours of community restitution. After a restitution hearing on July 10, 2013, the trial court ordered Tsimerman to pay $6,423.30 in restitution.

Tsimerman appeals.

## ANALYSIS

Sufficiency of the Evidence

Tsimerman contends that the State failed to prove beyond a reasonable doubt that he engaged in deception by submitting invoices to DSHS after Rekhter died. In particular, Tsimerman claims that (1) DSHS was aware of Rekhter's death; (2) he mailed a copy of Rekhter's agreement to pay him after her death to Evergreen Care Network, the DSHS contact office; (3) the State failed to produce any evidence that he received or submitted invoices after Rekhter's death; and (4) without evidence of

4

invoices, the SSPS internal records do not establish that Tsimerman claimed to have worked for Rekhter after her death. The evidence at trial does not support his argument.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. State v. Moles, 130 Wn. App. 461, 465, 123 P.3d 132 (2005). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. State v. Fiser, 99 Wn. App. 714, 719, 995 P.2d 107 (2000).

To convict Tsimerman of first degree theft, the State had the burden of proving beyond a reasonable doubt that he committed theft of more than $1,500. Former RCW 9A.56.030(1)(a) (LAWS OF 2007, ch. 199, § 3). To convict Tsimerman of theft by color or aid of deception, the State had the burden of proving beyond a reasonable doubt that Tsimerman knowingly created or confirmed another's false impression that in some way induced the victim to give up the property. RCW 9A.56.020(1)(b); RCW 9A.56.010(4); RCW 9A.56.010(5)(a), (b); State v. Mehrabian, 175 Wn. App. 678, 699-701, 308 P.3d 660 (2013).

The burden to prove DSHS relied on the defendant's deception "is established where the deception in some measure operated as inducement." State v. Casey, 81 Wn. App. 524, 528-29, 915 P.2d 587 (1996).

> The plain language of the [theft by color or aid of deception] statute
> does not require an express misrepresentation. The statute focuses on

5

the false impression created rather than the falsity of any particular statement.

State v. Wellington, 34 Wn. App. 607, 610, 663 P.2d 496 (1983).

Viewed in the light most favorable to the State, the exhibits admitted at trial and submitted to this court as part of the record on review show that invoices listing 173 hours of work were submitted telephonically to the SSPS under Tsimerman's provider number on June 27, July 28, August 26, and September 29, 2008. DSHS issued checks to Tsimerman for each of these invoices and Tsimerman cashed each check. Even without direct evidence such as fingerprints or voice recordings, these records are sufficient to allow a rational trier of fact to find that in order to induce DSHS to pay him the amount authorized under his individual service provider contract with DSHS, Tsimerman knowingly accessed the SSPS automated payment system and falsely claimed to have provided 173 hours of in-home-care services to Rekhter in each of the four months after her death. To the extent Tsimerman produced conflicting evidence at trial, the jury was free to weigh the evidence and determine the credibility of the witnesses. Fiser, 99 Wn. App. at 719. Sufficient evidence supports the convictions.

Civil Penalty - RCW 74.09.210

Relying on State v. Wilson, 158 Wn. App. 305, 313-14, 242 P.3d 19 (2010), Tsimerman contends the State could only charge him with the more specific violation of RCW 74.09.210 instead of first degree theft. RCW 74.09.210 requires repayment and authorizes civil penalties for any amounts obtained for unfurnished medical care by false statements or misrepresentation. See RCW 74.09.210(1), (2).

"When a specific statute and a general statute punish the same conduct, the statutes are concurrent and the State can charge a defendant only under the specific

6

statute." Wilson, 158 Wn. App. at 313-14. But the rule does not apply "where a criminal statute and a civil statute are in question." State v. Conte, 159 Wn.2d 797, 807, 154 P.3d 194 (2007).

> Absent explicit legislative command that a civil statute precludes prosecution under an existing criminal statute or that the criminal statute is repealed, the "general-specific" rule does not apply because its application would infringe on the prosecuting attorney's discretion to charge a crime.

Conte, 159 Wn.2d at 807. Nothing in RCW 74.09.210 precludes prosecution of theft.

Uncharged Conduct

Without citation to authority, Tsimerman claims the State was required to file charges for all amounts he received after Rekhter's death, including reimbursement for mileage.[3] Tsimerman argues that the prosecutor should have "consolidated" all of the amounts, including the smaller mileage amounts, into a single charge but chose to charge crimes based only on the checks over $1,500 in order to make the case "much harsher." We will not consider arguments not supported by citation to relevant authority. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 819, 828 P.2d 549 (1992).

RCW 9A.56.010(21)(c)

Tsimerman also argues that RCW 9A.56.010(21)(c) required the State to aggregate all the transactions into a single charge. But RCW 9A.56.010(21)(c) provides that in certain circumstances, a "series of transactions which constitute theft . . . may be aggregated in one count."[4] By its plain language, RCW 9A.56.010(21)(c) permits but does not require the State to aggregate charges. See, e.g., State v. Carosa, 83 Wn.

---

[3] For example, based on an invoice for mileage submitted to SSPS telephonically on August 26, 2008, DSHS paid Tsimerman $35.40.

[4] Emphasis added.

7

App. 380, 384, 921 P.2d 593 (1996) (State properly charged checkout clerk with three counts of second degree theft for single theft of more than $250 on each of three different days); see also State v. Hoyt, 79 Wn. App. 494, 496-97, 904 P.2d 779 (1995) (aggregation statute gives State discretion to charge multiple counts of third degree theft or aggregate counts into single count of felony theft).

Statute of Limitations

Tsimerman asserts the trial court erred by denying his motion to dismiss for violation of the statute of limitations under RCW 9A.04.080(1)(h) and RCW 10.01.040.[5] Tsimerman contends the six-year statute of limitations that became effective in 2009 does not apply to offenses committed in 2008.

RCW 9A.04.080(1)(h) provides a general three-year statute of limitations for felonies where the legislature has not provided a different statute of limitations. Effective July 2009, the legislature established a six-year statute of limitations for felony thefts accomplished by color or aid of deception. RCW 9A.04.080(1)(d)(iv); LAWS OF 2009, ch. 53, § 1.

---

[5] RCW 10.01.040 provides:

No offense committed and no penalty or forfeiture incurred previous to the time when any statutory provision shall be repealed, whether such repeal be express or implied, shall be affected by such repeal, unless a contrary intention is expressly declared in the repealing act, and no prosecution for any offense, or for the recovery of any penalty or forfeiture, pending at the time any statutory provision shall be repealed, whether such repeal be express or implied, shall be affected by such repeal, but the same shall proceed in all respects, as if such provision had not been repealed, unless a contrary intention is expressly declared in the repealing act. Whenever any criminal or penal statute shall be amended or repealed, all offenses committed or penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared in the amendatory or repealing act, and every such amendatory or repealing statute shall be so construed as to save all criminal and penal proceedings, and proceedings to recover forfeitures, pending at the time of its enactment, unless a contrary intention is expressly declared therein.

In State v. Hodgson, 108 Wn.2d 662, 666-67, 740 P.2d 848 (1987), our Supreme Court held, "When the Legislature extends a criminal statute of limitation, the new period of limitation applies to offenses not already time barred when the new enactment was adopted and became effective." The court also rejected arguments that RCW 10.01.040 prevented the application of a new limitation period because "this statute saves only substantive rights and liabilities of a repealed statute; it does not include a statute of limitation within its operation." Hodgson, 108 Wn.2d at 669-70.[6] Under Hodgson, the State charged Tsimerman within the applicable statute of limitations and the trial court properly denied Tsimerman's motion to dismiss.

Good Faith Claim of Title Instruction

Tsimerman argues that the trial court abused its discretion by refusing to instruct the jury with WPIC 19.08 regarding the affirmative defense of good faith claim of title. But the good faith claim of title defense "is inapplicable as a matter of law where the charge is theft by deception." Casey, 81 Wn. App. at 527. The instruction is not required when "it is logically impossible to convict without implicitly rejecting any claim of good faith." Casey, 81 Wn. App. at 527. "A jury cannot convict on a charge of theft by deception without first rejecting any claim of good faith by the defendant." Casey, 81 Wn. App. at 527. Here, the trial court allowed Tsimerman to argue that he believed he had a right to cash the checks based on his contract with Rekhter. Because the State charged theft by deception, the trial court properly refused to instruct the jury on the affirmative defense described in WPIC 19.08.

---

[6] Footnote and citation omitted.

9

Double Jeopardy

Tsimerman next contends he received multiple punishments for a series of transactions that were part of a single common scheme or plan constituting a single unit of prosecution in violation of double jeopardy principles.

Where, as here, a defendant is convicted for violating one statute multiple times, we must determine the " 'unit of prosecution' . . . the Legislature intended as the punishable act under the specific criminal statute." State v. Adel, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998). Under RCW 9A.56.020(1)(b), "theft" means "[b]y color or aid of deception to obtain control over the property . . . of another . . . with intent to deprive him or her of such property." The unit of prosecution under former 9A.56.030(1)(a) for first degree theft was $1,500 for each transaction. State v. Kinneman, 120 Wn. App. 327, 338, 84 P.3d 882 (2003). Tsimerman obtained four separate checks for more than $1,500 from DSHS on four separate occasions based on four separate invoices falsely claiming 173 hours worked providing in-home-care services during each of the four months after Rekhter's death. Tsimerman's four convictions of first degree theft do not violate double jeopardy. Kinneman, 120 Wn. App. at 332-33, 338 (State properly charged 28 counts of first degree theft and 39 counts of second degree theft based on 67 unauthorized withdrawals from trust account, diverting a total of over $200,000 to defendant's own use).

Jury Bias

Without citation to authority, Tsimerman argues that the trial court abused its discretion by denying his request for a new jury venire.

Decisions of whether a juror is impartial or whether a mistrial is required are matters of discretion for the trial court that will not be overturned on appeal absent abuse of that discretion. State v. Colbert, 17 Wn. App. 658, 664-65, 564 P.2d 1182 (1977). Tsimerman does not contend the trial court refused to consider his motion or based its denial on untenable reasons. Under the circumstances, Tsimerman fails to establish abuse of discretion in the trial court's assessment of the jurors' ability to be fair and impartial.

Restitution

Finally, as an alternative to reversal of his convictions, Tsimerman asks this court to include all amounts he obtained from DSHS after Rekhter's death in the restitution order for a total of $9,000. Because Tsimerman fails to identify relevant authority to support this request, we decline to address it. RAP 10.3(a)(6); Bosley, 118 Wn.2d at 819.

We affirm.

WE CONCUR: