IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37348-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOHN DIMITROS MILONAS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — John Dimitros Milonas appeals his convictions for unlawful firearm possession. We affirm.

FACTS

Sheriff's deputies went to Mr. Milonas's house to investigate a tip that Mr. Milonas, a convicted felon, was in unlawful possession of firearms. Mr. Milonas was not home at the time. The deputies instead met with Mr. Milonas's girlfriend and roommate, Cassie Vincent.

Ms. Vincent talked to the deputies and acknowledged there were guns inside the home. She turned over four firearms, explaining that they belonged to her and that she

kept them in a locked safe in the bedroom she shared with Mr. Milonas. Ms. Vincent subsequently consented to a residential search.

The deputies focused their search on the master bedroom. Once inside, they saw a pistol in a holster hanging from a bedpost. Ms. Vincent explained that the pistol belonged to Mr. Milonas and that the holster was hanging from his side of the bed. While in the master bedroom, the deputies examined the safe referenced by Ms. Vincent. It was located approximately one foot from Mr. Milonas's side of the bed. The safe contained a large amount of ammunition and an additional firearm.

Mr. Milonas was arrested later that afternoon. During a postarrest interview, Mr. Milonas claimed the guns in the safe were not his and he did not have access to them. When asked about the gun hanging from the bedpost, Mr. Milonas said, "well, I'll have to take ownership on that one since it wasn't locked up." 1 Report of Proceedings (RP) (Oct. 11, 2018) at 122. Mr. Milonas was able to provide detailed descriptions of the guns taken from the bedroom's safe. He also admitted his fingerprints might have been on one of the guns because he had handled it in order to place it in the safe.

Mr. Milonas was charged with six counts of unlawful firearm possession. The case went to trial and the State elicited testimony from the two sheriff's deputies and Ms. Vincent.

Ms. Vincent described herself as a gun person. She testified she knew Mr. Milonas was prohibited from possessing guns and because of that she kept her guns in the safe located in the master bedroom. Ms. Vincent testified that she kept the safe locked and possessed the only key. Ms. Vincent acknowledged that while she was at home, she would leave the key to the safe "[h]anging up by the door." 1 RP (Oct. 11, 2018) at 193.

During her testimony, Ms. Vincent affirmed that the pistol found in the holster belonged to Mr. Milonas. According to Ms. Vincent, the holstered pistol had been hanging there for a few months. Before that, it had been kept in the gun safe. Over a relevance objection, Ms. Vincent testified she and Mr. Milonas would sometimes go target shooting together. During those excursions, Mr. Milonas handled the various firearms, helped load them, and participated in shooting them.

Mr. Milonas testified in his own defense. He claimed he never had access to any of the firearms at the residence, including the pistol found in the holster on the bedpost.[1] According to Mr. Milonas, Ms. Vincent always kept all the guns locked in the safe. He denied ever handling the guns or going shooting.

---

[1] The defense theory was that Ms. Vincent set Mr. Milonas up by removing the pistol from the safe and hanging it on the bedpost. She allegedly did this because she was worried the pistol might be stolen and she did not want to get herself in trouble.

At the close of trial, the jury was instructed on the definition of "possession," including the difference between actual and constructive possession.

During final argument, both parties agreed the case revolved around constructive possession and the question of whether Mr. Milonas had access to the firearms found in his home. The State pointed out that Mr. Milonas knew the law, including the law of constructive possession, and Mr. Milonas knew he was not supposed to have access to firearms. According to the State, Mr. Milonas fabricated facts in order to fit them around the legal theory of lack of access. The State never claimed that because the firearms were found in Mr. Milonas's home, it did not need to prove access. The State instead emphasized it needed to prove a combination of Mr. Milonas's residency *and* access to the firearms. 2 RP (Oct. 12, 2018) at 297 ("If there are firearms in his home and he can access them, that would be a problem under the law.").

Relevant to this appeal, the prosecutor made two additional comments regarding constructive possession:

> Now the law says as a person who has been adjudicated guilty of a serious offense, you're not allowed to possess firearms, and so does that mean you can't live in a house with firearms? I would say, yes, absolutely, you can't live in a house with firearms. That's what the law says.

*Id.* at 277.

> [Mr. Milonas] cannot be in a home with firearms because if he's in a home with firearms, he has dominion and control over the premises. So whether you believe Cassie Vincent or not, he should not be in a home with firearms.

*Id*. at 297. The defense did not object to either statement.

The jury convicted Mr. Milonas of all six counts. He was sentenced to 26 months' confinement and timely appeals.

## ANALYSIS

*Testimony regarding target shooting*

Mr. Milonas contends the trial court improperly allowed Ms. Vincent to testify about Mr. Milonas's prior shooting excursions. At trial, the only bases for Mr. Milonas's objection were relevance and lack of foundation. On appeal, Mr. Milonas does not argue lack of foundation. We therefore limit our review to the issue of relevance. *See* RAP 2.5(a); *State v. Mason*, 160 Wn.2d 910, 933, 162 P.3d 396 (2007).

Evidence is relevant if it has any tendency to make a fact material to trial more or less probable. ER 401. "There must be a logical nexus between the evidence and the fact to be established." *State v. Cochran*, 102 Wn. App. 480, 486, 8 P.3d 313 (2000). The threshold for this connection is low. *State v. Briejer*, 172 Wn. App. 209, 225, 289 P.3d 698 (2012). Trial courts enjoy considerable discretion in assessing the relevance of contested evidence. *State v. Barry*, 184 Wn. App. 790, 801, 339 P.3d 200 (2014).

The central issue in this case was whether Ms. Vincent made effective efforts to deny Mr. Milonas access to firearms. Testimony about the prior shooting excursions tended to show she did not do so. The testimony indicated Ms. Vincent took a permissive attitude toward the guns. Although the guns were kept in a safe and the key was possessed by Ms. Vincent, Mr. Milonas was still allowed to handle the guns and use them. The evidence was relevant and properly admitted over Mr. Milonas's objection.

*Sufficiency of the evidence*

Mr. Milonas contends the evidence was insufficient to support five of his six firearm convictions. He does not challenge the sufficiency of the evidence with respect to the gun found in the holster. His argument goes to the remaining guns, which had all been stored in the safe. Mr. Milonas claims those guns were in the sole possession of Ms. Vincent and no rational trier of fact could have found Mr. Milonas possessed the firearms. We disagree.

When faced with a sufficiency challenge, we view the evidence in the light most favorable to the State. *State v. Randhawa*, 133 Wn.2d 67, 73, 941 P.2d 661 (1997). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "Circumstantial evidence and direct evidence are equally reliable." *State v.*

*Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004), *abrogated in part on other grounds by*

*Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We

defer to the trier of fact on issues of "conflicting testimony, credibility of witnesses, and

the persuasiveness of the evidence." *Thomas*, 150 Wn.2d at 874-75.

This case involves an allegation of constructive, as opposed to actual, possession.

Constructive possession is shown where the defendant had dominion and control over the

firearms themselves or the premises in which the firearms were found. *State v. Alvarez*,

105 Wn. App. 215, 221, 19 P.3d 485 (2001). Dominion and control need not be exclusive

to establish constructive possession, but close proximity alone is insufficient; other facts

must enable the trier of fact to infer dominion and control. *State v. George*, 146 Wn. App.

906, 920, 193 P.3d 693 (2008).

The evidence here was sufficient to prove constructive possession. Although five

of the six guns were stored in the safe, the State's evidence showed Mr. Milonas had

access to the safe. The evidence indicated Mr. Milonas kept his pistol in the safe before

storing it in a holster on the bedpost. In addition, Mr. Milonas admitted he likely left

fingerprints on at least one of the guns, as he had previously moved it into the safe. The

gun safe was located approximately one foot from Mr. Milonas's side of the bed and Mr.

Milonas had access to the safe's key whenever Ms. Vincent was home. The totality of this

evidence, coupled with the testimony that Mr. Milonas had occasionally used the guns in the safe for target practice, was sufficient to show Mr. Milonas had constructive possession of the guns in the safe on the day of the police search.

*Prosecutorial misconduct*

Mr. Milonas contends the prosecutor committed misconduct by misstating the law during summation. He alternatively argues his attorney was ineffective for failing to object. Neither claim merits relief.

Viewed in context, we find no misconduct. The prosecutor never argued Mr. Milonas could not be convicted even if the jury found he lacked access to the guns in the safe. The prosecutor repeatedly recognized the State needed to prove access. The prosecutor's comments about the law prohibiting Mr. Milonas from being in a home with firearms were specific to the circumstances of Mr. Milonas's case. Because there were no effective barriers to Mr. Milonas's access to firearms in his home, the prosecutor correctly argued it was unlawful for Mr. Milonas to have firearms in his home.

Mr. Milonas's ineffective assistance of counsel claim fails for the same reason as his misconduct claim. Establishing a violation of the constitutional right to effective assistance of counsel requires a defendant to show both deficient performance and prejudice. *Premo v. Moore*, 562 U.S. 115, 121, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011).

8

Mr. Milonas has not satisfied this standard. Because the prosecutor's statements, in context, did not misstate the law, it was not unreasonable for defense counsel not to object.

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Pennell, C.J.

WE CONCUR:

Korsmo, J.

Siddoway, J.

9