FILED
COURT OF APPEALS
DIVISION II

2014 OCT 21 AM 9: 12

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44807-6-II |
| Respondent, | |
| v. | |
| IBRAHIM HASSAN, | PUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Ibrahim Hassan appeals his convictions for two counts of second degree theft and two counts of unlawful issuance of a bank check (UIBC), as well as the trial court's restitution order. He claims that (1) the information and to-convict instructions for second degree theft were inadequate because they did not identify aggregation of multiple theft incidents based on a common scheme or plan as an essential element of the crime, (2) the to-convict instructions for UIBC omitted the essential element that the check be drawn on a bank or other depository for the payment of money, and (3) the sentencing court miscalculated his restitution and trial counsel's failure to challenge the restitution amount denied him his right to effective assistance of counsel.

We hold that the information and to-convict instructions for second degree theft were not required to reference aggregation because the amounts Hassan obtained control over when he deposited the checks satisfied the $750 threshold value, and that any defect in the UIBC to-convict instruction was harmless. We also hold that Hassan failed to preserve his challenge to

the restitution award, but that defense counsel deprived him of effective assistance of counsel during the restitution hearing by not arguing that the victim did not lose the full amount of the check Hassan gave her. Accordingly, we affirm Hassan's convictions but remand for correction of the restitution order.

## FACTS

Hassan had both personal and business accounts with the Navy Federal Credit Union (NFCU). NFCU apparently notified Hassan that he did not qualify to be a member and needed to close his accounts. On November 15, 2012, Hassan came into the Bremerton branch, closed his accounts, and withdrew all the funds that had been in those accounts. Hassan subsequently opened business and personal checking and savings accounts at O'Bee Credit Union.

On December 29, Hassan deposited a $2,450 check payable to himself drawn on a closed NFCU account into his O'Bee personal checking account. O'Bee allowed $1,000 of that amount to be immediately available for Hassan's use based on the assumption that it would clear the account. Immediately after depositing the check Hassan made a $500 cash withdrawal. Also that same day he made a $302 ATM (automatic teller machine) withdrawal.

On December 31, Hassan deposited a $955 check payable to himself drawn on a closed NFCU account into his O'Bee personal checking account. O'Bee allowed the entire amount to be immediately available for Hassan's use. That same day, Hassan made a $600 ATM withdrawal and a $160 debit card withdrawal. Both the December 29 and December 31 NFCU checks were returned to O'Bee unpaid because the NFCU account was closed.

On January 4, 2013, Hassan gave an $875 check drawn on a closed NFCU account to Rene Cavallo, the on-site manager of the Capitol Club Apartments, for his January rent. The check did not clear because it was written on a closed account.

On January 12, Hassan told his friend Tiffany Gilpin that he would loan her $1,000 to help repair her car. On January 14, Hassan gave her a $2,400 check drawn on the closed NFCU account. He asked her to deposit the check in her account, and then immediately withdraw $1,400 to give to him because it was an easier way for him to get cash than to go to his bank. As requested, Gilpin deposited the check in her account, withdrew $1,400, and gave that money to Hassan. Hassan's check did not clear.

The State charged Hassan with two counts of second degree theft for the two checks deposited in his O'Bee account, and with two counts of UIBC for the checks written to Capitol Club Apartments and Gilpin. A jury convicted Hassan on all counts. At the sentencing hearing, Hassan objected to the State's request for $2,400 in restitution to Gilpin, claiming only that Hassan had repaid $400 to her. The trial court ordered Hassan to pay the full $2,400. Hassan appeals.

## ANALYSIS

A.  ADEQUACY OF SECOND DEGREE THEFT INFORMATION AND INSTRUCTIONS

Hassan argues that the information charging the two second degree thefts was inadequate because it did not identify aggregation of multiple theft incidents based on a common scheme or

3

plan as an essential element of the crime.[1] He claims that the State had to aggregate the amounts from multiple transactions to reach the $750 value for second degree theft, and therefore it had to identify aggregation as an element of the crime in the information. Similarly, Hassan argues that the trial court's to-convict instructions for the second degree theft charges were inadequate because they did not impose on the State the burden of showing the aggregation of multiple transactions as part of a common scheme or plan.[2] We hold that the amount of money under Hassan's *control* after he deposited the checks, and not the amount of money he withdrew, determines whether he reached the $750 value threshold for second degree theft.

Former RCW 9A.56.040(1)(a) (2012)[3] provides that second degree theft constitutes the theft of property or services exceeding $750 in value but not exceeding $5,000 in value. Under RCW 9A.56.010(21)(c), the State can aggregate a series of transactions that constitute theft in one count and use the aggregate value of the transactions in determining the degree of theft. However, aggregation is permitted only if the State can show that the transactions are part of a criminal episode or a common scheme or plan. RCW 9A.56.010(21)(c). If the State aggregates value to reach a statutory value threshold, a common scheme or plan is an essential element of a

---

[1] The information for both second degree theft counts stated that Hassan "did by color or aid of deception, obtained [sic] control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services, the value of which exceeds seven hundred and fifty dollars ($750.00)." Clerk's Papers (CP) at 2-3

[2] The to-convict instructions for both second degree theft counts stated in part: "(1) That . . . the defendant by color or aid of deception, obtained control over property of another or the value thereof; and (2) That the property exceeded $750 in value; [and] (3)That the defendant intended to deprive the other person of the property." CP at 36-37.

[3] RCW 9A.56.040 was amended in 2013, but this amendment did not affect the subsection cited. LAWS OF 2013, ch. 322, §3.

crime that must be included in the information and in the to-convict instruction. *See State v. Rivas*, 168 Wn. App. 882-90, 278 P.3d 686 (2012), *review denied*, 176 Wn.2d 1007 (2013) (applying rule to second degree malicious mischief charge).

Hassan argues that the only way the State could meet the $750 threshold for second degree theft was to aggregate the $500 and $302 withdrawals based on the first deposit and the $600 and $160 withdrawals based on the second deposit. In contrast, the State argues that it did not need to aggregate Hassan's withdrawals in order to reach the $750 value threshold because Hassan had the ability to immediately withdraw up to $1,000 based on his deposit of the first check and up to $955 based on his deposit of the second check.[4] The issue is when the defendant fraudulently deposits a bad check in his own bank account, whether the value of the transaction is based on the amount immediately available for withdrawal or on the amount the defendant actually withdraws.

The State charged Hassan with second degree theft under RCW 9A.56.020(1)(b), which defines theft as:

> By color or aid of deception to *obtain control over* the property or services of another or the value thereof, with intent to deprive him or her of such property or services.

(Emphasis added). RCW 9A.56.010(10)(a) defines "obtain control over" as "to bring about a transfer or purported transfer to the obtainer or another of a legally recognized interest in the property."

---

[4] The State made this argument at trial, and it did not argue that the jury needed to aggregate the individual withdrawals to reach the $750 threshold for second degree theft. However, the trial court did give an aggregation instruction. The record does not explain why the trial court gave this instruction.

In interpreting statutory language, we give effect to the plain meaning of that language. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). Based on the plain language of RCW 9A.56.020(1)(b) and RCW 9A.56.010(10)(a), we hold that the amount immediately available to the defendant after depositing a bad check into his bank account determines the value of the theft transaction. Here, by depositing the checks in his bank accounts Hassan obtained immediate "control" over $1,000 for the first deposit and $955 for the second deposit – the funds were "transferred" to his account and he was free to withdraw those full amounts. His deposits of these checks and his acceptance of this control knowing that he did not have money to cover the amounts were the criminal acts. That Hassan actually withdrew lesser amounts does not affect the fact that he had control over more.

The amount under Hassan's control was $1,000 after depositing the first check and $955 after depositing the second check. Accordingly, because the State did not need to use aggregation to reach the $750 threshold, the information and the to-convict instructions for the second degree theft charges did not need to reference aggregation based on a common scheme or plan. As a result, we hold that the information was not deficient and the to-convict instructions did not fail to state an essential element of the crime.

B.     ADEQUACY OF THE UIBC TO-CONVICT INSTRUCTIONS

Hassan argues that the trial court's to-convict instructions for the two UIBC charges omitted an essential element of the offense: that the check be drawn on a bank or other depository for the payment of money. He also claims that the to-convict instructions and the instruction defining the crime irreconcilably conflict because the definitional instruction does

contain the language omitted from the to-convict instructions. We hold that any error in the to-convict instructions was harmless, and disagree that the instructions conflict.

We review the adequacy of jury instructions de novo. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 635, 244 P.3d 924 (2010). A trial court's failure to instruct the jury as to every element of the charged crime violates due process. *Rivas*, 168 Wn. App. at 891. Such a failing constitutes reversible error. *State v. Mills*, 154 Wn.2d 1, 6-7, 109 P.3d 415 (2005). Hassan did not object to the instructions at trial, but challenges to instructions that omit an element of the crime charged can be raised for the first time on appeal under RAP 2.5(a)(3). *See State v. O'Hara*, 167 Wn.2d 91, 101, 217 P.3d 756 (2009).

Hassan first argues that the trial court's to-convict instructions for the two UIBC charges omitted an essential element of the offense: that the check be drawn on a bank or other depository for the payment of money. RCW 9A.56.060(1) provides:

> Any person who shall with intent to defraud, make, or draw, or utter, or deliver to another person any check, or draft, *on a bank or other depository for the payment of money*, knowing at the time of such drawing, or delivery, that he or she has not sufficient funds in, or credit with *the bank or other depository*, to meet the check or draft, in full upon its presentation, is guilty of unlawful issuance of bank check.

(Emphasis added). The trial court omitted the first italicized portion but included the second italicized portion from the to-convict instructions, both of which provided:

> (1) That on or about [date], the defendant, acting with intent to defraud, made or delivered a check or draft to another person;
> (2) That said check or draft was in an amount greater than $750;
> (3) That at the time of such making or delivery the defendant knew that he did not have sufficient funds in or credit with the bank or depository to meet the check or draft in full upon its presentation; and
> (4) That any of these acts occurred in the State of Washington.

Clerk's Papers (CP) at 34, 35. These instructions followed WPIC 73.02, which does not include the statutory phrase "on a bank or other depository for the payment of money" in the first element. 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 73.02, at 115-116 (3d ed. 2008 and Supp. 2011).

We need not determine whether the to-convict instructions omitted an essential element of UIBC because even assuming that the instructions were defective, the error was harmless. Where a to-convict instruction omits an essential element of a crime, it is constitutionally defective unless the State can demonstrate that the omission was harmless beyond a reasonable doubt. *State v. Brown*, 147 Wn.2d 330, 339-41, 58 P.3d 889 (2002). In this context, the error is harmless if uncontroverted evidence supports the omitted element. *Brown*, 147 Wn.2d at 341.

Here, the uncontroverted evidence showed that the checks Hassan delivered to the apartment manager and Gilpin were drawn on a bank or other depository for the payment of money. Hassan did not contest this fact. Further, the third element of the to-convict instructions required the State to prove that Hassan delivered the checks knowing that he did not have sufficient funds or credit with *the bank or depository* to meet the checks or drafts in full upon presentation. The jury would have understood from this provision that the checks had to be drawn on a bank or other depository.

Second, Hassan claims that the to-convict instructions and the definitional instruction irreconcilably conflict because the definitional instruction contains the language omitted from the first element of the to-convict instructions. We disagree that the to-convict instructions conflicted with the instruction defining the crime. Instruction 9 stated:

> A person commits the crime of unlawful issuance of a bank check when, with intent to defraud, he or she makes or delivers to another person any check or draft in an amount greater than $750 *on a bank or other depository for the payment of money*, and the person knows at the time of such making or delivery that he or she does not have sufficient funds in, or credit with, the bank or other depository, to meet the check or draft, in full, upon its presentation.

CP at 35 (emphasis added). This instruction included the statutory language omitted from the to-convict instructions.

When the trial court provides inconsistent instructions to the jury, we review them to determine whether the inconsistency results in a clear misstatement of the law and, if so, we presume the instructions misled the jury and prejudiced the defendant. *State v. Walden*, 131 Wn.2d 469, 478, 932 P.2d 1237 (1997). But here there was no inconsistency. Although the phrase "on a bank or other depository for the payment of money" was omitted from the first element listed in the to-convict instructions, it was included in the third element. And nothing in those instructions conflicted with the phrase "on a bank or other depository for the payment of money" in instruction 9.

We reject Hassan's arguments that the trial court's UIBC jury instructions require a new trial.

C.     RESTITUTION

Hassan argues that the trial court erred in setting the amount of restitution to Gilpin at $2,400 because Gilpin's only loss was the $1,400 she gave to him, and that amount should have been further reduced because he repaid her $400. He also claims that trial counsel's failure to object to the additional $1,000 in restitution denied him his right to effective assistance of counsel. We do not directly address the amount of restitution other than the disputed $400

because Hassan did not object below, but hold that his defense counsel was ineffective for not objecting to the additional $1,000 in restitution based on Hassan's loan to Gilpin.

1. Restitution Amount

We review a sentencing court's restitution award for an abuse of discretion. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).

The evidence at trial showed that Gilpin suffered a loss of at least $1,400, the amount in cash she gave Hassan after she deposited his $2,400 check. Gilpin testified that she asked Hassan for her money back but he did not give the money back to her. Hassan claims that he repaid $400, and Gilpin testified that Hassan did give her $400 at some unstated time. But the trial court reasonably could have interpreted Gilpin's testimony as stating that the $400 payment occurred before the incident.

With regard to the additional $1,000 in restitution the trial court ordered, Hassan did not object at the time of sentencing and therefore did not preserve this issue for appeal. Accordingly, we do not directly address the amount of restitution on appeal under RAP 2.5(a). However, we do address this issue below under Hassan's ineffective assistance of counsel claim.

2. Ineffective Assistance of Counsel

A defendant has the right to counsel at a restitution hearing. *State v. Milton*, 160 Wn. App. 656, 657, 252 P.3d 380 (2011). Hassan argues that his counsel's failure to challenge the $2,400 restitution award at trial denied him his right to effective assistance of counsel. We agree.

10

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 34. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34.

Unless a defendant agrees to the restitution amount, the State must prove the losses by a preponderance of the evidence. *State v. Tobin*, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007). Here, the State proved that Gilpin suffered a loss of $1,400. But there is nothing in the record supporting the trial court's conclusion that Gilpin suffered a loss relating to the $1,000 she deposited in her account and did not pay to Hassan in cash. Gilpin admitted that this amount was a loan, not money that Hassan owed to her. And there is no evidence that Gilpin suffered any loss due to the $1,000 loan she thought she was receiving not materializing. Therefore, the State failed to prove by a preponderance of the evidence that Gilpin incurred more than a $1,400 loss.

Because there was no evidence to support a $2,400 restitution award, counsel should have objected to that award. And there was no conceivable tactical reason not to object. Accordingly, defense counsel was deficient in this respect. Further, defense counsel's failure to object prejudiced Hassan because if counsel had pointed out the State's failure to sustain its burden of proving an additional $1,000 loss, the trial court would have declined to include that amount in its restitution award. Accordingly, we hold that defense counsel's representation was ineffective regarding the restitution award.

44807-6-II

The record shows that the trial court abused its discretion in awarding $2,400 in restitution rather than $1,400. Therefore, we remand for correction of the restitution order to reduce the amount of restitution by $1,000.

We affirm Hassan's convictions but remand for correction of the restitution order.

_____
MAXA, J.

We concur:

_____
WORSWICK, P.J.

_____
LEE, J.

12