IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86853-5-I |
| Respondent, | DIVISION ONE |
| v. | |
| JUSTIN JAMES DANIELS, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, C.J. — Justin Daniels rented a mobile home from Gloria Breed on a wooded lot. In August 2021, Breed notified Daniels that she wanted to sell the property and he needed to vacate by the end of 2021. That September, a neighbor notified Breed that Daniels was cutting down trees on the property. Breed hired a lumber appraiser, who estimated $2,700 in timber was missing.

The State charged Daniels with one count of first degree theft. At trial, the jury was presented with instructions for first degree theft, as well as the lesser included charges of second degree and third degree theft. The jury convicted Daniels of theft in the second degree and he was ordered to pay restitution to Breed. Daniels appeals.

Finding no error, we affirm but remand to correct the scrivener's error in the restitution order.

FACTS

Background

In August 2020, Justin Daniels began renting a mobile home from Gloria Breed. The mobile home was located on Breed's property, which was approximately two-and-a-half acres and mostly wooded. The rental agreement between Daniels and Breed specified that nothing was to be taken from the property. Breed also told Daniels that "no live trees were to be cut at any time."

In 2021, Breed decided she wanted to sell the property. Breed contacted a lawyer to draft a termination of tenancy, which was given to Daniels in August 2021. The following month, a neighbor informed Breed that he had "heard a lot of chainsaw activity" on her property. Breed went to the property and saw that trees had been cut down. Breed tried to contact Daniels for several days, but was unsuccessful.

In October, Breed contacted a lumber appraiser, Steven Garner, who accompanied her to the property to evaluate the damage. While Garner was at the property, Daniels admitted to him that he had cut down the trees to sell for firewood. Garner concluded that 34 trees, ranging in age, species, and size, had been cut down. Garner noted that everything but the slash[1] from the cut trees had been removed from the property. Garner calculated the net market value of

---

[1] "Slash" is a term used to describe the treetops, limbs, and other woody material left behind after a tree is harvested. Amy Grotta, Don't Want to Burn? Other Options for Treating Slash after a Timber Harvest, TreeTopics (Oct. 16, 2019), https://blogs.oregonstate.edu/treetopics/2019/10/16/dont-want-to-burn-other-options-for-treating-slash-after-a-timber-harvest/# [https://perma.cc/QT48-2A6H].

the missing timber at $2,618.10. This estimate was based on the cost of felling, bucking, yarding,[2] and delivering the trees to a mill. Garner noted that the limbs and slash of the trees were not included in the total market value. Garner also calculated the replacement cost of the trees at $474,000.

Daniels moved off the property in February 2022.[3] In March, the State charged Daniels with theft in the first degree. At trial, the instructions to the jury included the two lesser included offenses of second and third degree theft. The jury instructions did not include common scheme or plan as an essential element. A jury convicted Daniels of second degree theft. Daniels did not object to the restitution order for $2,618.10. Daniels appeals.

ANALYSIS

The Information

Daniels asserts the information was constitutionally insufficient because it failed to include the "common scheme or plan" element and the conviction must be reversed. Because the information contained the necessary facts to apprise Daniels of the crime charged, the information was sufficient.

This court reviews challenges to the sufficiency of a charging document de novo. *State v. Rivas*, 168 Wn. App. 882, 887, 278 P.3d 686 (2012). When the charging document is challenged for the first time on appeal, the court adopts a more liberal standard of review: "Charging documents which are not challenged until after the verdict will be more liberally construed in favor of validity than those

---

[2] Felling is cutting down trees, bucking is cutting felled trees into logs, and yarding is moving the logs to a central storage place.

[3] Breed sold the property in June 2022.

3

challenged before or during trial." *State v. Kjorsvik*, 117 Wn.2d 93, 103, 812 P.2d 86 (1991). A two-pronged test is used to resolve challenges to the sufficiency of the charging document: "(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that [they were] nonetheless actually prejudiced by the inartful language which caused a lack of notice?" *Kjorsvik*, 117 Wn.2d at 105-06. If the charging document, when read "as a whole and in a common sense manner," informs the defendant of the charges against them, it is sufficient even if it does not include an essential element. *Kjorsvik*, 117 Wn.2d at 110-11 (holding that even though "intent" was an essential element of the crime and not included in the charging document, it was sufficient that the charging document included "unlawfully," "with force," and "against the [victim's] will"). If a court reaches the second prong of the test, it may look to the statement of probable cause to determine whether the inartful language caused prejudice. *State v. Pry*, 194 Wn.2d 745, 753, 452 P.3d 536 (2019).

An accused person has a constitutional right to be informed of the charges against them. *Rivas*, 168 Wn. App. at 887. Accordingly, a charging document must include all essential elements of a crime to "give notice to an accused of the nature of the crime that [they] must be prepared to defend against." *Kjorsvik*, 117 Wn.2d at 101.

1. Common Scheme or Plan

Under RCW 9A.56.040, "a person is guilty of theft in the second degree if he or she commits theft of . . . [p]roperty or services which exceed(s) seven

4

hundred fifty dollars in value but does not exceed five thousand dollars in value."
The State may aggregate multiple, smaller theft transactions to reach a statutory value threshold. RCW 9A.56.010(21)(c). While there is conflicting case law, Washington courts have largely held, "If the State aggregates value to reach a statutory value threshold, a common scheme or plan[4] is an essential element of a crime that must be included in the information." *State v. Hassan*, 184 Wn. App. 140, 146, 336 P.3d 99 (2014); *see also State v. Farnworth*, 199 Wn. App 185, 217, 398 P.3d 1172 (2017). *But see State v. Reid*, 74 Wn. App. 281, 292, 872 P.2d 1135 (1994) ("Common scheme or plan is not an element of first degree theft.").[5] Notably, in *Farnworth*, the court commented that its decision in *Reid* "relied on shaky grounds" for the proposition that common scheme or plan was not an element of first degree theft and declined to follow that holding. 199 Wn. App. at 219.

Here, even if common scheme or plan was a required element, the information, when read in a commonsense manner and as a whole, was sufficient to apprise Daniels of the crime committed and he suffered no prejudice.

---

[4] "A defendant acts pursuant to a common scheme or plan when [they] (1) commit[] several crimes, each of which constitutes a part of [their] larger plan or (2) [they] develop[] a plan and carr[y] it out multiple times to achieve distinct, but substantively similar, crimes." *Rivas*, 168 Wn. App. at 889.

[5] The State also cites to *State v. Goe* for the proposition that common scheme or plan is not an element of first degree theft for purposes of the charging document, but this case is unpublished and only persuasive. No. 44054-7-II, (Wash. Ct. App. May 13, 2014) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2044054-7-II%20%20Unpublished%20Opinion.pdf.

Daniels did not challenge the sufficiency of the charging document at trial; therefore, the rule of liberal construction is appropriate on appeal.

Addressing the first prong of the two-part test, the information included the necessary facts to inform Daniels of the nature of the crime being charged. The information stated, in relevant part:

> On or between January 1, 2021 and February 14, 2022, in the County of Kitsap, State of Washington, the above-named Defendant did wrongfully obtain or exert unauthorized control over the property or services of another, to-wit: GLORIA ANN BREED, or the value thereof, with intent to deprive said person of such property or services, such property or services being in excess of five thousand dollars ($5,000.00) in value; contrary to the Revised Code of Washington 9A.56.020(1)(a) and RCW 9A.56.030(1)(a).

Therefore, the information fairly implies that Daniels's charge of first degree theft is for the sum of the trees chopped down on Breed's property. The charging language, featuring a date range of over a year, put Daniels on notice that the charge included the value of all the property obtained from Breed's land.

Moving to the second prong, Daniels cannot show, nor does he even argue, that he was prejudiced by the inartful language of the information. When a court reaches the second prong, it can consider the statement of probable cause. Here, the statement of probable cause further describes that the charge involved multiple actions. It references Daniels cutting down trees on Breed's property on multiple occasions[6] and it includes Garner's estimate for the total value of the timber.

---

[6] "[Breed] advised after she called in September she told [Daniels] to stop cutting down the trees. [Daniels] told her he was having hard times with his job so he was selling the timber. He continued selling timber after [Breed] told him not too [sic]."

Because the information put Daniels on notice of the crime charged and he was not prejudiced by the inartful language, the information was sufficient.

2.  Continuing Course of Conduct

When an individual commits multiple, smaller thefts, the State does not need to aggregate the value of the crimes to reach the statutory threshold if the transactions are considered a continuing course of conduct.  *See State v. Carosa*, 83 Wn. App. 380, 382-83, 921 P.2d 593 (1996) (noting that when the defendant stole money multiple times in one day from the same party, it was a continuing course of conduct and the values did not need to be aggregated); *State v. Vining*, 2 Wn. App. 802, 808-09, 472 P.2d 564 (1970) ("[W]here the successive takings are the result of a single, continuing criminal impulse or intent and are pursuant to the execution of a general larcenous scheme or plan, such successive takings constitute a single larceny regardless of the time which may elapse between each taking.").

To determine whether an act is several distinct acts or a continuing course of conduct, "the facts must be evaluated in a commonsense manner."  *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989).  Courts will consider factors such as the location, timing, subject, and intent of the act to determine whether it is a single continuous act or several distinct acts.  *See State v. Lee*, 12 Wn. App. 2d 378, 393, 460 P.3d 701 (2020); *Handran*, 113 Wn.2d at 17.  Where the evidence shows conduct occurring at one location, within a brief period of time, towards a single victim, and with intent to accomplish a single objective, the conduct is a continuous course of conduct.  *Lee*, 12 Wn. App. 2d at 394.  A "brief

7

period of time" can include action over the course of a few weeks or even a year. *State v. Craven*, 69 Wn. App. 581, 849 P.2d 681 (1993) (finding repeated assaults during a three-week period constituted a continuing course of conduct); *State v. Elliott*, 114 Wn.2d 6, 14, 785 P.2d 440 (1990) (noting that acts of prostitution committed over the course of a year constituted a continuing offense).

Here, Daniels's behavior constituted a continuous course of conduct. Per his rental agreement, Daniels had a continuing duty to not take timber from the property. Yet, over the course of 13 months, Daniels cut down 34 trees on Breed's property with the objective of removing the trees from the property and using them for firewood. Daniels did not have a different intent for every tree he cut—it was all part of a single, continuous enterprise. Because the thefts were a continuous course of conduct and his theft charge was not based on a theory of aggregation, common scheme or plan was not an essential element.

### Sufficiency of the Evidence

Daniels asserts the evidence presented at his trial was not sufficient to support his conviction for second degree theft. We disagree. The State presented substantial evidence that Daniels wrongfully obtained more than $750 worth of timber from Breed's property; therefore, the evidence was sufficient to support Daniels's conviction.

This court reviews the sufficiency of evidence under the substantial evidence standard. *Dolan v. King County*, 172 Wn.2d 299, 310-11, 258 P.3d 20 (2011). To determine whether substantial evidence was presented, the court

must view the evidence in the "light most favorable to the state" and determine whether "any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). This standard of review is highly deferential to the jury's decision. *In re Pers. Restraint of Arnsten*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024).

To prove theft in the second degree, the State must show that Daniels "wrongfully obtain[ed] or exert[ed] control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(a). "Wrongfully obtain[]" means to take wrongfully the property or services of another. RCW 9A.56.010(23)(a). The State must also establish that the value of the property is more than $750 and less than $5,000. RCW 9A.56.040(1)(a).

Here, sufficient evidence in the record shows that Daniels wrongfully obtained more than $750 worth of timber from Breed's property. First, Breed testified that the rental agreement signed by her and Daniels included a clause stating nothing was to be removed from the property. Breed also had a conversation with Daniels about not cutting any live trees. Therefore, any trees cut and removed from the property were wrongfully obtained.

Daniels does not deny that he wrongfully obtained "the trees he cut down, cut into smaller pieces, and then used as firewood." What Daniels disagrees with is the amount of timber that was removed from the property versus what was left. Daniels states that most of the wood from the 34 trees he cut was left on the property and, because most of the timber was left on the property, it cannot be

9

shown he "wrongfully obtained" more than $750 worth of timber. Additionally, Daniels claims the market value Garner ascribed to the trees ($2,618.10) included all the felled trees, not just the trees he wrongfully obtained. But this argument ignores Garner's testimony.

First, Garner testified that everything but the limbs and slash of the 34 trees cut down was removed from the property. Garner noted the trees cut down ranged in diameter from five inches to 34 inches and, given the types of trees felled, an enormous amount of debris (slash) would be left behind. He testified if all the limbs and slash left on the property were piled up, "there would be a minimum of three piles probably the size of a small motor home." Garner also clarified that his market value calculation for the felled trees did not include either the limbs or slash. Therefore, the market value of the trees wrongfully obtained was more than $750. Daniels also tries to rely on Breed's seemingly conflicting testimony—where she states that "a lot of the big stuff" was left on the ground— to show that he did not take all the trees. But what Daniels leaves out is when Breed stated "stuff that was suitable for firewood was gone."

The State presented substantial evidence to support the jury's verdict that Daniels committed theft in the second degree.

<u>To-Convict Instructions</u>

Daniels argues the to-convict instructions were defective for failing to include the element of common scheme or plan. We disagree. The invited error doctrine applies here, and even if there was not invited error, the error was harmless.

10

We review alleged errors in to-convict instructions de novo.  *State v. Weaver*, 198 Wn.2d 459, 464, 496 P.3d 1183 (2021).

Instructions to the jury are "foundational in our criminal proceedings" and must inform the jury on every element of the offense charged.  *Weaver*, 198 Wn.2d at 465.  When an essential element is omitted from the to-convict instructions, the instructions are constitutionally defective and require reversal unless (1) the invited error doctrine applies, *State v. Henderson*, 114 Wn.2d 867, 871, 792 P.2d 514 (1990), or (2) the omission was harmless, *Hassan*, 184 Wn. App. at 149.

1. <u>Invited Error Doctrine</u>

The invited error doctrine "prohibits a party from setting up an error at trial and then challenging that error on appeal."  *State v. Kelly*, 25 Wn. App. 2d 879, 885, 526 P.3d 39, *aff'd*, No. 102002-3 (Wash. Dec. 19, 2024), https://www.courts. wa.gov/opinions/pdf/1020023.pdf.  The doctrine applies even when constitutional issues are involved.  *Henderson*, 114 Wash. 2d at 871.  "To determine whether the invited error doctrine applies, [the court] consider[s] whether the defendant 'affirmatively assented to the error, materially contributed to it, or benefited from it.' "  *Kelly*, 25 Wn. App. 2d at 885 (quoting *State v. Momah*, 167 Wn.2d 140, 154, 217 P.3d 321 (2009)).  The party merely failing to object is not enough, *Kelly*, 25 Wn. App. 2d at 885; the defendant must take "knowing and voluntary actions to set up the error."  *In re Pers. Restraint of Call*, 144 Wn.2d 315, 328, 28 P.3d 709 (2001).  When a defendant proposes or agrees to a jury instruction, they are precluded from raising a challenge to the instruction on appeal.  *State v. Winings*,

126 Wn. App. 75, 89, 107 P.3d 141 (2005); *see also State v. Gaff*, 90 Wn. App. 834, 845, 954 P.2d 943 (1998) (holding the invited error doctrine precluded review because all parties agreed to the wording of the jury instructions).

Here, Daniels did not propose the jury instructions, but he explicitly agreed to them and, therefore, the invited error doctrine applies. When the court asked Daniels if he took "exception or objection to any of the instructions the Court intends on giving," Daniels clearly stated, "No objections, Your Honor." Daniels's argument focuses only on who proposed the jury instructions, but by agreeing to the jury instructions, Daniels took affirmative actions in setting up the error. Daniels cites to *State v. Simms*, No. 71863-1-I (Wash. Ct. App. Sept. 14, 2015) (unpublished),[7] and *State v. LeFaber*, 128 Wn.2d 896, 904 n.1, 913 P.2d 369 (1996) (Alexander, J., dissenting), for the proposition that where the record is unclear as to who proposed the instruction, the invited error doctrine does not apply. But these cases are distinguishable.

First, *Simms* is an unpublished opinion and does not serve as binding precedent. Second, even if the case was controlling, no evidence revealed that the defendant agreed to the jury instructions, only that he did not object. Here, Daniels explicitly agreed to the proposed instructions. Daniels also cites to *LeFaber*, but that case is equally unpersuasive, as the Court declined to address the invited error doctrine because "the record [was] somewhat unclear as to whether defense counsel merely failed to except to the giving of the instruction, or whether [they] affirmatively assented to the instruction or proposed one with

---

[7] https://www.courts.wa.gov/opinions/pdf/718631.pdf

similar language." 128 Wn.2d at 907 n.1. Because Daniels explicitly agreed to the jury instructions, he cannot now challenge them on appeal.

2. Harmless Error

When to-convict instructions omit an essential element of the crime, the instructions are "constitutionally defective unless the State can demonstrate that the omission was harmless beyond a reasonable doubt." *Hassan*, 184 Wn. App. at 149. An error is harmless if the court can " 'conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.' " *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) (quoting *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). When an essential element has been omitted from the to-convict instructions, the error is harmless if "uncontroverted evidence supports the omitted element." *Hassan*, 184 Wn. App. at 149 (citing *Brown*, 147 Wn.2d at 341).

Here, even if common scheme or plan was an essential element, its absence in the jury instructions is harmless error. The evidence is clear that Daniels was the person who felled the trees and his actions were part of a plan to use the timber as firewood. First, Daniels never denies that he cut down the trees or used the timber for anything other than firewood; he only challenges the value of the trees taken. But Garner clearly testified the total value of the timber removed from the property—not including any of the slash or limbs left on the ground—was $2,618.10. Because the evidence clearly supports the proposition that Daniels cut down multiple trees as part of a plan to use the timber as

firewood, the omission of common scheme or plan from the to-convict instructions was harmless.

## Restitution

Daniels claims the restitution amount is not causally related to the precise acts of his second degree theft conviction. The State contends this claim is unpreserved and without merit. We agree with the State.

This court reviews a sentencing court's determination of restitution for abuse of discretion. *Hassan*, 184 Wn. App. at 151. A court's decision is an abuse of discretion when it is "manifestly unreasonable or based on untenable grounds." *Hassan*, 184 Wn. App. at 151. Absent an abuse of discretion, a trial court's order of restitution will not be disturbed on appeal. *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). Additionally, if an error is raised for the first time on appeal, the appellate court may refuse to hear the claim. RAP 2.5(a).

The authority of a court to order restitution is derived entirely from statute. *Tobin*, 161 Wn.2d at 523. The amount of restitution "shall be based on easily ascertainable damages for injury to or loss of property." RCW 9.94A.753(3). The amount of restitution must be causally related to the offense charged and the victim's loss. *State v. Johnson*, 69 Wn. App. 189, 191, 847 P.2d 960 (1993).

At trial, Daniels, through counsel, agreed the restitution amount was proper. When the court asked Daniels's attorney whether he was disputing the restitution request, he said, "No, I think that's exactly what the jury found."

14

Because Daniels first raises this issue on appeal, the court has discretion to deny review.

Even if the claim were preserved for review, the amount of restitution was not in error. As discussed in the previous section, sufficient evidence was provided for the jury to find the market value of the trees was $2,618.10. Therefore, the amount of restitution was causally connected to theft and the trial court did not err.

Because Daniels agreed to the amount of restitution and the amount was causally connected to the crime, the trial court did not abuse its discretion.

Scrivener's Error

Daniels contends remand is required to correct a scrivener's error in the written restitution order. The State agrees. The record reflects there is in fact an error; therefore, we remand to the trial court with instructions to correct the scrivener's error.

"A 'scrivener's error' is a clerical mistake that, when amended, would correctly convey the trial court's intention based on other evidence." *State v. Wemhoff*, 24 Wn. App. 2d 198, 202, 519 P.3d 297 (2022). The remedy for a scrivener's error is to remand the judgment to the trial court for correction. *State v. Sullivan*, 3 Wn. App. 2d 376, 381, 415 P.3d 1261 (2018).

Here, during sentencing, the trial court expressly stated the restitution order was in the amount of $2,618.10 and indicated as much when it corrected the order of restitution, which originally said $4,896.60. However, the second page of the order still stated $4,896.60 as a total amount of restitution. This is

clearly a scrivener's error and the matter should be remanded with instructions to correct the scrivener's error in the restitution order.

We affirm but remand to correct the scrivener's error in the restitution order.

_Smith, C.J._

WE CONCUR:

_Feldman, J._          _Chung, J._