IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39581-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CURTIS RAY PACK, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Following a bench trial on stipulated facts, the trial court found Curtis Ray Pack guilty of two counts of first degree theft for taking down-payments on contracts to build outbuildings and then failing to begin work or return the deposits. On appeal, he raises numerous arguments, including a challenge to the sufficiency of the evidence used to convict him of first degree theft. In support of this challenge, he argues that our review is limited to the facts found by the trial court and whether the court's findings are supported by substantial evidence.

We disagree and reaffirm that our review of a challenge to the sufficiency of evidence used to support a conviction following a bench trial is whether the evidence, when viewed in a light most favorable to the State, is sufficient for any rational finder of

fact to find the elements of the crime beyond a reasonable doubt. Under this standard, the evidence here was sufficient to support the conviction for first degree theft.

Otherwise, we affirm, declining to address Pack's unpreserved challenge to restitution, and remand for the limited purpose of reconsidering fees and interest on restitution.

## BACKGROUND

After revoking a stipulated order of continuance (SOC), the trial court held a bench trial on stipulated facts. The following facts are taken from the stipulated evidence.

In December 2017, Mark Westcott contracted with Pack, doing business as Millennium Construction Group, to have a steel building constructed on his property for $21,207.28. This price included an estimated $595.00 to obtain the necessary permit from the City of Pasco Community and Economic Development Department (Department) and a down payment of $11,717.28. Pack told Westcott when they signed the contract that he would begin work in January 2018 and that it would take approximately 30 days to complete the project. Westcott gave Pack a check for the required down payment the following week. In January, Westcott decided to increase the size of the building. Pack told him that additional funds were required to proceed, and Westcott gave Pack another check for $4,438.60.

Over the next few months, Westcott repeatedly texted and emailed Pack to check on the status of the permit and the start date for the project. Pack consistently responded that he was waiting on the Department or sick and unable to work. Westcott eventually contacted the Department directly and received an email stating that the permit was approved but had not been paid or picked up. Westcott forwarded the email to Pack and inquired about why the permit had not been picked up. Pack responded that he was sick but that he or his wife would pick up the permit the following day. Westcott continued to inquire about the permit after several days. Pack continued to respond that he was sick but promised on several different occasions that the permit would be picked up.

Westcott continued to contact Pack and request that he start the contracted work or issue Westcott a full refund of his down payment. Pack continued to make promises that he would have more information at a later date. After sending a text stating he would set a time to meet with Westcott when he had more information about his illness, Pack stopped all communications.

Westcott drafted a demand letter and sent it to Pack twice by certified mail and once by email. Pack never responded. The permit was never picked up nor paid, no work was done on the contracted project, and Westcott's down payment was never returned.

Six months after the contract was signed, Westcott hired legal counsel and filed a complaint against Pack and Western Surety Co., Pack's surety bond company. In May

3

2018, Westcott obtained a default judgment for $12,000.00 against Pack to reach Pack's bond proceeds only. Western Surety Co. paid Westcott the full amount and canceled Pack's surety bond.

In February 2018, two months after contracting with Westcott, Pack, entered into a contract with James Carroll to build a pole building for $47,549.95. The price included an estimated $600 to obtain a permit from the Department and a down payment of $25,933.95. The next day, Carroll paid the required down payment with a check. That was the last time Carroll saw Pack.

For the next two months, Carroll texted Pack to check on the status of the required engineering and permit as well as the start date for the project. Pack responded with several different answers, first that he was waiting on the engineer, then the county, that he had gotten pneumonia in both lungs but was starting to feel better and it was nothing that affected Carroll's project schedule, and finally, that there was no news on the permit.

Carroll eventually contacted the Department to see why the permit had not been approved and was told that the proper paperwork was not submitted. Carroll then worked directly with the Department to get them the necessary paperwork, and the permit was finally approved in May 2018. Carroll immediately notified Pack, but he never responded. Carroll called and sent texts, emails, and letters to Pack requesting a refund of his down payment but never received any response.

Later that month, Carroll sent a letter to Pack's business address by certified mail demanding the immediate return of his down payment, but it came back undeliverable. Carroll attempted to call Pack on three occasions, but Pack never answered any calls. Aside from filing the permit application, which did not contain all the necessary information, Pack took no action to complete the contracted project. The permit was never paid or picked up, and no materials, cite preparation, or other contracted work was completed.

In June 2018, Carroll contacted the police and reported what he described as Pack's fraud and theft of his down payment to Officer Bradley Klippert. Carroll emailed Officer Klippert a copy of Westcott's affidavit filed in his civil suit against Pack, which included details about Pack's additional victims, including Lonnie Hill and Jeffrey Tucksen.

Based on this information, Officer Klippert contacted Lonnie Hill, who told him that he had been a victim of Pack's "schemes" but did not want to file a report, nor did he wish to pursue charges against Pack. Officer Klippert then spoke with Jeffrey Tucksen, who stated he was also a victim of Pack's schemes.

Officer Wakeman then contacted Tucksen at his residence for a more detailed statement. In November 2017, approximately one month before Westcott contracted with Pack, Tucksen entered into a contract with Pack, to construct a small building for

$32,021.07, and required a down payment of $17,483.94 due at acceptance. The following day, Tucksen issued two separate checks at Pack's request, each for $7,893.50.

Pack hired the necessary subcontractors to begin work on Tucksen's contracted work but failed to pay the subcontractors in full. Pack also purchased lumber and had it delivered, but then Tucksen never heard from Pack again. He attempted to locate Pack and sent him several messages, but Pack never responded. He also tried to locate Pack through other contractors and suppliers but was unsuccessful. Tucksen stated that Pack took approximately $7,000.00, which had not been used to complete the work.

Pack then sought other work after failing to complete the contracted work for Westcott, Carroll, and Tucksen. In November 2018, Pack was offering contractor work on Craigslist in the Tri-Cities area. The Washington Department of Labor and Industries issued him an infraction and a $1,000 penalty for advertising when not registered as a contractor, as required. In April 2019, Pack was issued another infraction and a $5,000 penalty for posting on Craigslist advertising that he was a "Contractor for Hire" in Spokane when he was not registered as a contractor, as required.

The State charged Pack with two counts of theft in the first degree. The parties eventually agreed to resolve the case by way of an SOC. The stipulated order continued the case for 36 months. As part of the agreement, Pack waived most of his trial rights and agreed to pay restitution by monthly installments of $1,189.23. The SOC provided that if Pack complied with the terms the charges would be dismissed, but if he violated

6

the terms the court would revoke the order and hold a bench trial based on the evidence

submitted by the State. In addition, Pack stipulated to the following facts:

> Defendant took $16,155.88 from Harold Westcott and did not perform any
> work and did not return his money, then three months later, took
> $26,656.35 from James and Dianna Carroll and did not perform any work
> and did not return their money.

Clerk's Papers (CP) at 33.

Over the next several months, Pack made only one partial restitution payment of

$500. Eventually, the trial court found that Pack had breached the SOC by failing to

make the monthly restitution payments, revoked the stipulated order, and set the matter

for a stipulated facts trial. Based on the stipulated facts, the trial court found Pack guilty

on both counts. The court explained that it "did carefully look at the intent portion, and

unfortunately because of the lack of communication or the communications that there

were between the parties," it found that the State met its burden of proof on the intent

element. Rep. of Proc. (RP) at 39.

The trial court's amended findings of fact provide:

1. The Court adopts the previously filed stipulation to the police reports
   filed with the Court by the parties, which included 280 pages of reports,
   emails, purchase orders, checks, and Department of Labor and Industry
   documents.
2. In summary of that stipulation, Defendant was doing business as
   Millennium Construction, based out of Kennewick, and signed a
   contract with Harold Westcott to build a post frame building on Mr.
   Westcott's property. On December 29, 2017, Mr. Westcott paid
   Defendant by check a down payment of $11,717.28, which was cashed
   that day at Numerica Credit Union. Subsequently, on January 16, 2018,

7

Mr. Westcott provided Defendant an additional check for $4438.60, which was cashed on January 18, 2018, at 4:47 PM at Numerica Credit Union. After cashing the checks, Defendant never began work on the project, never picked up or completed payment for the building permit, and eventually dropped all communication with Mr. Westcott. Nothing was built by Defendant and he never returned the deposited funds. While having not completed any work for Mr. Westcott, on February 22, 2018, James Carroll signed a contract with Defendant to build a pole barn on Mr. Carroll's property over the next six weeks. James and Dianna Carroll provided Defendant a check for the down payment of $25,933.95, which was deposited by Defendant at 5:20 PM that day at Numerica Credit Union. No building was ever built, Defendant has not returned the down payment, and dropped all communication with Mr. Carroll.

3. The documents submitted included several incidents that supported the defendant had intent to deprive the owners of said property. This included the repeated promises of getting the work done, misrepresentations about obtaining the required paperwork, lack of communication with the parties once they requested a refund, and seeking out other work after failing: to complete work promised. Additional parties who could be classified as victims chose not to pursue charges.

CP at 14.

At sentencing, defense counsel argued that Pack was found indigent by the court in November 2018, and that he remained indigent. Pack also personally stated that he was indigent. In reference to Carroll and Westcott's money, the court noted, "I just don't see that they're going to get any of it back." RP at 64. When discussing Pack's report to jail date, the court also stated, "I don't believe that [Pack] has the ability to work right now." RP at 64. However, the trial court made no explicit finding that Pack was indigent.

8

The court then declared it was going to strike the non-mandatory fees. However, the court imposed the $500 victim penalty assessment (VPA), $200 criminal filing fee, $100 DNA collection fee, and restitution. At the end of the hearing, the court found Pack indigent for purposes of appeal.

Pack timely appealed.

ANALYSIS

1.  SUFFICIENCY OF THE EVIDENCE

Pack contends the evidence was insufficient to support his conviction for first degree theft. As part of this challenge, he assigns error to the trial court's finding that Pack acted with intent to deprive his customers of their property. He also contends that the State failed to prove that Pack obtained unauthorized control over the property of another or did so by color or aid of deception. The State argues that the evidence was sufficient for the trial court to conclude that each element of the crimes was proved.

As an initial matter, the parties disagree on the standard of review for this issue. Pack contends that "following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). The State argues that when determining whether sufficient evidence supports a conviction, the evidence is viewed in the light most favorable to the State to determine whether any rational fact finder could have found the elements of the crime beyond a

reasonable doubt. *State v. Green*, 94 Wn.2d. 216, 221-22, 616 P.2d 628 (1980). Pack

replies, arguing that *Homan* is subsequent binding authority. We conclude that the

proper standard was articulated in *Green*.

In *Green*, our Supreme Court adopted the standard for reviewing sufficiency of the

evidence set by *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560

(1979). *Green*, 94 Wn.2d at 220 n.2. Under this test, a court considering a challenge to

the sufficiency of evidence is required to consider the entire record, in a light most

favorable to the State, to determine if any "rational trier of fact could have found guilt

beyond a reasonable doubt." *Id*. This standard was later affirmed in *State v. Engel*, 166

Wn.2d 572, 576, 210 P.3d 1007 (2009), and applied to challenges of evidence sufficiency

following a bench trial in *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

In *Homan* the court considered a challenge to the sufficiency of the evidence to

support a conviction following a bench trial. 181 Wn.2d at 105. Citing *Engel*, the court

held that it was required to "view the evidence in the light most favorable to the

prosecution and determine whether any rational fact finder could have found the elements

of the crime beyond a reasonable doubt." *Id*. However, in the next sentence, the court

provides: "Specifically, following a bench trial, appellate review is limited to determining

whether substantial evidence supports the findings of fact and, if so, whether the findings

support the conclusions of law." *Id*. at 105-06. The court goes on to define

"[s]ubstantial evidence" as "evidence sufficient to persuade a fair-minded person of the

truth of the asserted premise." *Id*. at 106. *Homan*'s "substantial evidence" test has been applied in several subsequent cases.[1]

In *State v. Stewart*, 12 Wn. App. 2d 236, 246, 457 P.3d 1213 (2020) (Dwyer, J., concurring), Judge Dwyer pointed out numerous reasons why the "substantial evidence" test adopted in *Homan* is "inconsistent with the standard set forth in *Jackson*." In *State v. Roberts*, the court recognized that the proper scope and standard of reviewing the sufficiency of evidence following a bench trial is unclear. 32 Wn. App. 2d 571, 588, 553 P.3d 1122 (2024). After quoting Judge Dwyer's lengthy and persuasive concurring opinion on why *Green* is the correct standard, the court went on the find the evidence sufficient under either standard. *Id*. at 586-87, 589.

Here, Pack argues that we are bound by *Homan*, and our review is limited to the court's findings and whether "substantial evidence" supports those findings. It is true that under "vertical stare decisis" we are bound by a higher court's ruling. *Presbytery of Seattle v. Schulz*, 10 Wn. App. 2d 696, 708, 449 P.3d 1077 (2019). But *Homan* is not the last word on the correct standard. Instead, in *State v. Bergstrom*, the Supreme Court reaffirmed that the correct standard for reviewing sufficiency of the evidence following a

---

[1] *See*, *e.g.*, *State v. Hankel*, No. 38573-6-III, slip op. at 3 (Wash. Ct. App. Dec. 6, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/385736_unp.pdf; *State v. Hovey*, No. 38534-5-111, slip op. at 2 (Wash. Ct. App. June 8, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/385345_unp.pdf; *State v. Smith*, 185 Wn. App. 945, 956-57, 344 P.3d 1244 (2015).

bench trial is set forth in *Jackson* and *Green*.  199 Wn.2d 23, 41 n.14, 502 P.3d 837

(2022).

In this case, we apply the standard established in *Green* and affirmed by

*Bergstrom*.  When considering a challenge to the sufficiency of evidence, we review all

of the evidence in a light most favorable to the State to determine if any rational trier of

fact "'could find the essential elements of the charged crime beyond a reasonable

doubt.'"  *Bergstrom*, 199 Wn.2d at 41.[2]  To the extent our earlier decisions have applied

the "substantial evidence" standard, we disagree with those decisions.  *See Presbytery of*

*Seattle*, 10 Wn. App. 2d at 707 ("Under 'horizontal stare decisis,' a court is not required

to follow its own prior decisions.").

Pack contends that the State failed to produce sufficient evidence to prove two

elements of theft the means of committing the crime and Pack's intent.  As charged, the

State had to prove that Pack was guilty of two counts of first degree theft by either

"wrongfully obtain[ing] or exert[ing] unauthorized control over the property or services

of another," or by using the "color or aid of deception to obtain control over the property

or services of another."  RCW 9A.56.020(1)(a), (b).  Under either means the State was

also required to prove Pack obtained control of the property or services "with the intent to

---

[2] Review for sufficiency of the evidence should be distinguished from challenges
to the trial court's findings of fact and conclusions of law.  *See State v. Head*, 136 Wn.2d
619, 964 P.2d 1187 (1998) (The court's "failure to enter written findings of fact and
conclusions of law as required by CrR 6.1(d) requires remand.").

deprive [the person] of [their] property or services." *Id*. Finally, the State must prove the

property or services taken were valued at $5,000 or more. RCW 9A.56.030(1)(a).

With respect to the element of intent, the trial court found:

The documents submitted included several incidents that supported the
defendant had intent to deprive the owners of said property. This included
the repeated promises of getting the work done, misrepresentations about
obtaining the required paperwork, lack of communication with the parties
once they requested a refund, and seeking out other work after failing to
complete work promised. Additional parties who could be classified as
victims chose not to pursue charges.

CP at 14.

Pack challenges this finding and argues that all of the events cited by the court in

support of this finding occurred after the exchange of money. Thus, he contends the

court's findings fail to support the conclusion that Pack formed an intent at the time he

accepted money from Westcott and Carroll to deprive them of their money.

Pack's argument rests on the premise that our review for sufficiency of the

evidence is limited to the evidence identified in the trial court's findings. This argument

fails for two reasons. First, in its findings the court adopted the parties' stipulation as

well as the 280 pages of evidence. In addition, as noted above, in reviewing a challenge

to the sufficiency of the evidence in a criminal case, we consider all of the evidence,

viewed in a light most favorable to the State, to determine if "any" rational trier of fact

could find the element proved beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

13

This is an objective standard. *See Stewart*, 12 Wn. App. 2d at 247 (Dwyer, J.

concurring). When reviewing evidence for sufficiency, we consider circumstantial

evidence as probative as direct evidence. *State v. Goodman*, 150 Wn.2d 774, 781, 83

P.3d 410 (2004).

Pack also contends that the trial court failed to make explicit findings that the State

proved either of the alternative means of theft.[3] Specifically, Pack contends that there is

no evidence that he exerted unauthorized control over his customers' money, noting that

the customers freely handed over their money under contracts that did not include any

limitations or reservations on how the money could be spent. Similarly, he also argues

there was no evidence of deception at the time the contracts were entered, pointing out

that the events relied upon by the trial court to find deception occurred after the money

was exchanged and merely demonstrate a contractor who unintentionally fell behind after

getting sick.

The State responds that the evidence was sufficient to prove both alternatives.

We conclude that the circumstantial evidence was sufficient to prove that Pack

used the color or aid of deception to convince Westcott and Carroll to make substantial

---

[3] We disagree with Pack's argument that in the absence of a specific finding, we must presume the State failed to sustain its burden, citing *State v. Armenta*, 134 Wn.2d 1, 14, 948 P.2d 1280 (1997). In *Armenta*, the court was reviewing a trial court's finding on a motion to suppress. *Id*. at 13. Here we are reviewing the entire record for sufficiency of the evidence.

down payments on projects when Pack had no intention of providing the services promised.[4]

The term "[b]y color or aid of deception" requires the State to prove "that the deception operated to bring about the obtaining of the property or services." RCW 9A.56.010(4). "Deception" occurs when a defendant knowingly "[c]reates or confirms another's false impression which the actor knows to be false" or "fails to correct another's impression which the actor previously has created or confirmed." RCW 9A.56.010(5)(a), (b). Deception does not require an express misrepresentation; instead, the statute focuses on the creation of false impressions. *State v. Briejer*, 172 Wn. App. 209, 218, 289 P.3d 698 (2012). "'Deception' includes a broad spectrum of conduct, including 'not only representations about past or existing facts, but also representations about future facts, inducement achieved by means other than conduct or words, and inducement achieved by creating a false impression even though particular statements or acts might not be false.'" *Id*. (quoting *State v. Casey*, 81 Wn. App. 524, 528, 915 P.2d 587 (1996)). "'[I]t is not necessary that deception be the sole means of obtaining the property or services.'" *Id*.

---

[4] Because we determine the evidence was sufficient to show an intent to obtain the money through color or aid of deception, we need not address the other alternative means charged in this case. *See State v. Braun*, 20 Wn. App. 2d 756, 782, 502 P.3d 884 (2022) ("Following a bench trial, when a single offense can be committed by alternative methods, a conviction may rest on proof that the crime was committed by any one of the means charged.").

Intent may be inferred from conduct of the accused that "plainly indicates such intent as a matter of logical probability." *Id*. at 217.

The trial court found, and the evidence shows, that at the time Pack accepted money from both Westcott and Carroll he was already behind on other projects and had stopped working and communicating with those customers. One month before accepting money from Westcott, Pack had accepted money from Jeffrey Tucksen on the promise to build Tucksen a shed. Although Pack made a partial payment to a subcontractor and had lumber delivered to the site on credit, Tucksen never heard from Pack again. Despite Pack's failing commitment to Tucksen, Pack entered into a new contract with Westcott, promising to complete Westcott's project by the end of January and accepting a large down payment. Two months later, after falling further behind on Tucksen's project, and failing to complete any work on Westcott's project, Pack entered into a new contract with Carroll, and accepted another large down payment after assuring Carroll he could complete the project in six weeks. He failed to perform any work on this project as well and stopped communicating with Carroll.[5]

---

[5] On appeal, Pack disputes the finding that he did not do any work, pointing out that he applied for a permit, suggesting that this act required additional preliminary work. But this argument is foreclosed by Pack's stipulation in the SOC that Pack "took $26,656.35 from James and Dianna Carroll and *did not perform any work* and did not return their money." CP at 33 (emphasis added).

16

This evidence supports an inference that Pack made promises to induce Westcott and Carroll to hand over large down payments at a time when Pack did not have the ability or the intent to follow through on his promises. In each case he gave the false impression that he would be able to complete the projects within a particular time period. In both cases, he failed to start the projects other than to submit incomplete applications for permits before ceasing to communicate with the customers and failing to return the down payments. While Pack contends that the evidence suggests a contractor who came to realize his inability to complete these projects only after signing the contracts, we disagree that this is the only reasonable interpretation of the evidence.

Viewing all of the evidence in a light most favorable to the State, we conclude that any rational trier of fact could find that the State proved the elements of first degree theft by color or aid of deception beyond a reasonable doubt in support of both convictions.

2. RESTITUTION

Pack contends that the restitution order does not reflect the parties' actual damages and that the amount is not supported by a preponderance of the evidence. Alternatively, Pack contends that to the extent defense counsel was required to argue that the State did not meet its burden to prove the actual damages, counsel was deficient for failing to do so and the deficiency was prejudicial. The State argues that Pack not only failed to object and should not be allowed to raise the issue for the first time on appeal, but that he also explicitly agreed to the amounts and signed the SOC agreeing the amounts were proper.

A. *Restitution Amount–Error Preservation*

Generally, this court will "refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). Requiring error preservation through timely objections "serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials." *State v. Lazcano*, 188 Wn. App. 338, 356, 354 P.3d 233 (2015).

Pack failed to preserve any objection to the restitution amount. Pack signed the SOC, explicitly agreeing to the restitution amounts. The SOC stated "the defendant shall make full payment of $42,812.23 restitution." CP at 32. It also stated that Pack stipulated to the following facts at trial:

> Defendant took $16,155.88 from Harold Westcott and did not perform any work and did not return his money, then three months later, took $26,656.35 from James and Dianna Carroll and did not perform any work and did not return their money.

CP at 33. Defense counsel stated on the record that the parties agreed with the terms set forth in the stipulated order of continuance and that he reviewed them with Pack and believed he understood the terms and conditions. When asked by the court if he had any questions about the SOC, Pack stated, "No, I don't. . . . I understood, and we went over 'em really well actually." RP at 4.

At the sentencing hearing on March 10, 2023, the court inquired about the dollar figure at the bottom of the judgment and sentence form, to which the State explained that it was the total of the two restitution amounts, plus other fees. And still, Pack made no objection. Finally, Pack signed the judgment and sentence on March 10, 2023, again explicitly agreeing to the restitution amounts of $16,155.88 to Westcott and $26,656.35 to Carroll. No objections regarding the restitution amounts were ever made.

The State contends that had Pack objected to the restitution amount at sentencing, the State would have been able to supplement the record with additional evidence.

Because Pack failed to object to the restitution amounts, this alleged error is unpreserved. Moreover, Pack does not argue that an exception to RAP 2.5(a) applies. Thus, we decline to review the restitution issue.

### B. *Ineffective Assistance of Counsel*

Alternatively, Pack contends, in one sentence, that defense counsel was deficient for failing to raise the issue and that the deficiency was prejudicial:

> To the extent defense counsel was required to argue the State did not meet its burden, this Court should find counsel was deficient for failing to do so, and that this deficiency was prejudicial. *See State v. Hassan*, 184 Wn. App. 140, 151-53, 336 P.3d 99 (2014) (where State did not sustain its burden of proof, failure to object to the amount of restitution was ineffective assistance).

Br. of Appellant at 21. The State makes no arguments in response.

We decline to address this argument as well. An appellant must provide an "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

3.   LEGAL FINANCIAL OBLIGATIONS

Pack contends the VPA, criminal filing fee, and DNA collection fee must be struck from his judgment and sentence due to recent changes in the law and because he is indigent. He also argues that this court should remand the case for the sentencing court to consider whether restitution interest is appropriate due to his indigency. The State concedes that the fees should be struck and agrees that remand is necessary for the trial court to determine restitution in light of RCW 10.82.090(2). We accept the State's concession.

Because the determination of whether and to what extent interest should be applied to the order on restitution is discretionary, we remand for a limited sentencing hearing to address the legal financial obligations imposed in the judgment and sentence. *See* RCW 10.82.090(2) (The court has discretion on whether "to impose interest on any restitution the court orders.").

No. 39581-2-III
*State v. Pack*

We affirm Pack's convictions, but remand for the limited purposes of reconsidering the legal financial obligations including the discretion to impose interest on the order of restitution.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Cooney, J.